## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL F. ZABRESKY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:12-0020** |
| **v.** | : | **(JUDGE MANNION)** |
| **JULIANNE VON SCHMELING,** *et al.,* | : | |
| | : | |
| **Defendants** | : | |
| | : | |

## MEMORANDUM[1]

Presently before the court are motions to dismiss filed by Defendant von Schmeling, (Doc. No. 42), and Defendants Quinn, Duffy, Davis, Kane, Biscotto, Austin, Para and Tigue, (hereinafter the "Luzerne County Defendants"). (Doc. No. 44). The plaintiff claims civil rights violations related to his allegedly unlawful arrest. Finding that issues of fact remain as to the validity of the warrant and circumstances surrounding the plaintiff's arrest, but that some claims are duplicative or barred by the doctrine of sovereign immunity, the court will deny each motion in part and grant each motion in part.

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

## I.   FACTUAL BACKGROUND

In 1995, Defendant von Schmeling commenced child custody and support actions against the plaintiff, the father of her child, in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. No. 38). In 2009, Defendant von Schmeling sought modification of the support order and a hearing was set for July 14, 2009. On July 6, 2009, the plaintiff filed a motion to continue the hearing. Though the motion was accepted by the clerk of the court, it was not immediately docketed and was therefore never granted. The plaintiff did not appear at the July 14 hearing. At the hearing Defendant von Schmeling presented her petition for modification and the Hearing Officer recommended that the plaintiff's monthly child support payment be increased by $250.00 from $533.00 to $783.00. (Doc. No. 47 Att. 2). The plaintiff filed exceptions to the Hearing Officer's recommendation. On October 26, 2009, Judge Musto of the Court of Common Pleas for Luzerne County entered an order denying the plaintiff's exceptions, affirming the recommendation, and setting the plaintiff's monthly child support payment at $738.00 per month. (Doc. No. 47 Att. 3). On November 17, 2009, the plaintiff filed a motion for special relief and a stay which also sought to continue a contempt hearing scheduled for November 24, 2009. Judge Musto denied the request to continue the November 24 hearing but did not address the merits of the remainder of the motion. At the November 24 hearing, Judge Musto found the

plaintiff to be in contempt, though it is unclear from the plaintiff's complaint the reasons for which he was found to be in contempt, and placed him on probation for a period of six months. (Doc. No. 38 Att. 1).

The plaintiff alleges that during the November 24, 2009 hearing he and his attorney attempted to clarify whether he was to pay $533.00 or $738.00 in monthly support while awaiting another scheduled hearing in which the plaintiff planned to dispute the modification. The plaintiff alleges that Judge Musto told him to pay $533.00 and that this instruction was heard by Defendant von Schmeling, Defendant Eugene Duffy, a probation officer, and Defendant Michael Quinn, a support officer. The plaintiff includes a partial transcript from the hearing which does not contain any direct statements by Judge Musto regarding the payment of $533.00 rather than the amount of $738.00 indicated in the court's order. (Doc. No. 38 Att. 1 at 8-11). The plaintiff also asserts that he contacted Defendant Quinn via telephone on December 21, 2009 to double-check the amount to be paid and that Defendant Quinn instructed him to pay $533.00 because that is what Judge Musto had stated at the hearing.

On December 21, 2009, the plaintiff submitted his child support payment in the amount of $533.00. On December 28, 2009, a bench warrant was issued by Judge Clinton Smith. (Doc. No. 38 Att. 1). The bench warrant is stamped "probation violation warrant" and indicates that it was issued

because the plaintiff "failed to appear, after notice, before the Court for a scheduled conference and/or hearing." The plaintiff asserts that no hearing or conference was scheduled between the contempt hearing on November 24, 2009 and the issuance of the warrant.

On January 7, 2010, Defendants Biscotto, Austin, Para and Tigue, all employees of the Luzerne County Domestic Relations Section, took the plaintiff into custody. These defendants did not present the plaintiff with a copy of the warrant, but instructed him that he was being taken into custody because he had failed to pay child support. The plaintiff was handcuffed and placed in the back of an unmarked car outside of a local restaurant. While in custody, the plaintiff was afforded the opportunity to speak briefly with his attorney and wife. The attorney spoke with Defendant Duffy and Defendant James Davis, the Director of the Domestic Relations Section, who each relayed that the plaintiff had failed to pay the correct amount of support and that was why he had been arrested. The plaintiff asserted that he had been told to pay $533.00, not $738.00 as the defendants claim. Through the various communications between the plaintiff, his attorney, his wife and the defendants, it was established that if the plaintiff could pay the additional $250.00 of support he would be released.

During the plaintiff's transportation to the courthouse, one of the defendants – the specific defendant is not indicated in the amended complaint

4

– asked "what did you do to piss your ex off so much?" The defendant then stated that he was referring to Defendant von Schmeling and that she had been "hounding" Defendant Duffy to arrest him. Once at the courthouse, the plaintiff paid $250.00 at the Domestic Relations Section and was released. He was not taken before a judge. On January 8, 2010, the bench warrant was vacated.

## II.    PROCEDURAL HISTORY

On January 5, 2012, the plaintiff filed his original complaint. (Doc. No. 1). Pursuant to this court's order dated April 26, 2012, (Doc. No. 26), the plaintiff filed an amended complaint on May 2, 2012. (Doc. No. 38). The plaintiff's amended complaint comprises nine counts. Count I alleges civil rights violations pursuant to 42 U.S.C. §1983 and arising under the Fourth, Fifth and Fourteenth Amendments against the Luzerne County Defendants. Specifically, Count I alleges: an unreasonable search and seizure; a deprivation of his liberty without due process; a deprivation of his property without due process; excessive force; false arrest; and, a governmental taking without just compensation. Count II raises claims of failure to implement appropriate policies and procedures against Defendant James Davis, Director of the Domestic Relations Section and Kevin James, Deputy Director of the Domestic Relations Section. Count III again raises a claim of false arrest

against Defendants Biscotto, Austin, Para and Tigue. Count IV alleges a deprivation of property without due process of law in violation of the Fifth and Fourteenth Amendments against the Luzerne County Defendant, with the exception of Defendant Kane. Count V alleges malicious prosecution against all defendants both under [§1983](#) and as pendant state law claims. Count VI again alleges false arrest against Defendants Biscotto, Austin, Para and Tigue also under [§1983](#) and as pendant state law claims. Count VII raises [§1983](#) claims and pendant state claims for false imprisonment against all defendants. Count VIII is a pendant state law claim for intentional infliction of emotional distress against Defendant von Schmeling. Count IX alleges a civil conspiracy against all named defendants.

On May 11, 2012, Defendant von Schmeling filed a motion to dismiss, (Doc. No. [42](#)), and brief in support, (Doc. No. [43](#)). On May 15, 2012, the remaining defendants filed their motion to dismiss, (Doc. No. [44](#)). On May 21, 2012, the defendants filed a brief in support, (Doc. No. [46](#)), and an appendix of exhibits, (Doc. No. [47](#)). On May 28, 2012, the plaintiff filed a brief in opposition to Defendant von Schmeling's motion to dismiss, (Doc. No. [48](#)). On June 7, 2012, the plaintiff filed a brief in opposition to the motion to dismiss filed by the remaining defendants, (Doc. No. [52](#)). On June 21, 2012, the defendants filed a brief in reply, (Doc. No. [55](#)).

## III.    STANDARD OF REVIEW

The defendant's motion to dismiss is brought pursuant to the provisions of [Fed. R. Civ. P. 12(b)(6)](). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

7

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## IV. DISCUSSION

The plaintiff raises nine separate counts in his amended complaint. The plaintiff alleges violations arising under §1983 in addition to separate and distinct claims arising under specific constitutional provisions; however, §1983 does not provide a separate basis for civil rights claims. Rather §1983 provides a private cause of action for violations of constitutionally protected rights by individuals acting under the color of state law. *See Kopec v. Tate*,

[361 F.3d 772, 775-76 (3d Cir. 2004)](). As such, the court will examine each of the plaintiff's substantive allegations of constitutional deprivations under [§1983](), but will not address each repetitive claim individually. To the extent the plaintiff attempts to bring separate claims based solely on liability arising from [§1983](), such claims will be dismissed.

### A. Immunity

#### I. Absolute Immunity

The Luzerne County Defendants argue that their quasi-judicial roles as members of the Domestic Relations Section entitle them to absolute immunity from suit with regard to the plaintiff's [§1983]() claims. In support of their claim of absolute immunity, the Luzerne County Defendants offer case law in which members of Domestic Relations Section within this district have been entitled to absolute immunity because they perform discretionary functions that are judicial in nature. For example, in *[Concert v. Luzerne County Dep't of Children & Youth](), 2010 WL 2505685 (M.D.Pa. June 15, 2010),* the court found the members of the Domestic Relations Sections were entitled to immunity when a plaintiff attempted to challenge their decisions regarding the custody of the plaintiff's child. In *[Slawek v. White](), 1992 WL 68247 (E.D.Pa. Mar. 25, 1992),* the court held that a Domestic Relations employee who continued prosecution of paternity and support claims despite an automatic stay in the plaintiff's

9

bankruptcy petition was entitled to immunity. In addition, the defendants cite *Snyder v. Snyder*, 2012 WL 512003 (M.D.Pa. Jan. 24, 2012), *adopted by Snyder v. Snyder*, 2012 WL 511993 (M.D.Pa. Feb. 15, 2012), to support their contention that the Domestic Relations Section is, as a whole, protected by absolute immunity.

The court finds the case law unpersuasive in light of the allegations in the instant case. Each case cited by the Luzerne County Defendants involves a member of the Domestic Relations Section who was either making decisions regarding child custody or prosecuting related proceedings. Such actions are properly insulated against collateral attacks by unsuccessful and disappointed litigants. In the instant case, however, allegations that members of the Domestic Relations Sections improperly arrested the plaintiff pursuant to a faulty warrant does not evoke the same concern over the necessary separation of litigants and judicial officers. Moreover, at this stage it is unclear as to what role each defendant may have played in procuring the warrant. Therefore, none of the defendants is entitled to absolute immunity at this stage in the proceeding.

### ii. Qualified Immunity

In the alternative, the defendants argue that they are entitled to qualified immunity with respect to the plaintiff's §1983 claims. The doctrine of qualified

10

immunity provides that government officials performing "discretionary functions," are shielded from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). Qualified immunity provides not only a defense to liability, but "immunity from suit." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The qualified immunity analysis requires the court to consider whether the official's acts violated a constitutional or statutory right and, if so, whether that right was clearly established at the time of the violation. *Id.* (citing *Yarris v. County of Del.*, 465 F.3d 129, 140-41 (3d Cir. 2006)). At this stage, the record does not support finding that any of the defendants are entitled to qualified immunity. The plaintiff has alleged that he was arrested pursuant to an invalid warrant which, if true, would be a violation of a clearly established constitutional right. As such, the defendants are not entitled to qualified immunity at this time.

### iii. Sovereign Immunity for State Law Claims

Finally, the Luzerne Count Defendants argue that each is entitled to sovereign immunity for the plaintiff's pendant state law claims of false arrest, false imprisonment and malicious prosecution. Generally, the doctrine of sovereign immunity bars claims for state law torts against "the

11

Commonwealth, and its officials and employees acting within the scope of their duties." 1 Pa.C.S. §2310. The statute further provides that such parties "shall continue to enjoy sovereign immunity and official immunity . . . unless the General Assembly shall specifically waive immunity". 1 Pa.C.S. §2310; *see Larsen v. State Employees' Ret. Sys*., 553 F.Supp.2d 403, 420 (M.D. Pa. 2008). In Pennsylvania, sovereign immunity applies to Commonwealth employees in both their official and individual capacities. *See Larsen*, 553 F.Supp.2d at 420.

The Pennsylvania General Assembly has only waived sovereign immunity in certain prescribed circumstances. *See* 42 Pa.C.S. §8522(b). The nine exceptions to the rule of immunity provided for in the Code all arise out of negligent acts.[2] Id. The Luzerne County Defendants correctly argue that the plaintiff's claims do not fall in to any of these narrow categories. Moreover, the defendants correctly state the Pennsylvania standard for determining whether conduct occurred within the scope of one's employment, finding employment is within the scope if: (1) it is the kind the employee is employed to perform; (2) it occurs substantially within the authorized time and space

---

[2] The nine categories for which sovereign immunity will not apply are: (1) vehicle liability; (2) medical professional liability; (3) care custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. See 42 Pa.C.S. § 8522(b).

limits; and (3) it is actuated, at least in part, by a purpose to serve the master. *See Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000)(quoting RESTATEMENT (SECOND) OF AGENCY §228). Here, the actions of the Luzerne County Defendants all appear to be of the type for which they are employed, occurred during the normal time of employment and, though allegedly performed in error, were performed with the purpose of serving their respective masters. Therefore, to the extent that the plaintiff alleges liability against the Luzerne County Defendants for pendant state law claims, each is entitled to sovereign immunity. As such, state law claims against each of the Luzerne County Defendants in their official and individual capacities will be dismissed.

### B. Fifth Amendment Claims

The defendants argue that any alleged violations of Fifth Amendment to the United States Constitution must fail because the plaintiff has not named any federal officials as defendants. The court agrees. *See Kelly v. Borough of Sayreville, N.J.*, 107 F.3d 1073, 1076 (3d Cir. 1997) (due process claim against state official is analyzed under the Fourteenth, rather than the Fifth, Amendment); *Jones v. City of Jackson*, 203 F.3d 875, 880 (5th Cir. 2000). As such, with regard to his Fifth Amendment claims, the plaintiff has failed to properly state a claim. Therefore, any claims that the defendants violated the

plaintiff's Fifth Amendment rights will be dismissed.

### C. General Fourteenth Amendment Claims

The defendants argues that any duplicative Fourteenth Amendment due process claims should be dismissed. The court agrees. The Third Circuit has explained that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Betts v. New Castle Youth* Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (citing *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Here, the plaintiff's allegation arise from his allegedly improper arrest. This claim of improper arrest and the related claims of false imprisonment and malicious prosecution are properly analyzed under the Fourth Amendment. Consequently, the plaintiff's substantive due process claims will be dismissed under the "more-specific-provision rule." *See Betts*, 621 F.3d at 261.

In addition, Count I of the plaintiff's amended complaint makes general procedural due process claims, which will also be dismissed. As explained above, the plaintiff's claims are clearly premised on alleged Fourth Amendment violations. "[A]s the gravamen of his lawsuit is so clearly premised on a First and/or Fourth Amendment violation based upon his

14

alleged malicious prosecution and arrest without probable cause, the Court will dismiss the procedural due process claim along with the substantive due process claim." *Swedron v. Borough*, 2008 WL 5051399, *6 (W.D. Pa. Nov. 21, 2008) (citing *Merkle v. Upper Dublin School Dist.*, 211 F.3d 782, 792-93 (3d Cir. 2000)).

The plaintiff makes a specific due process claim in Count IV of his amended complaint alleging that he was improperly forced to pay $250.00 before he was released, but was never afforded a hearing. This specific claim, for which no more-specific-provision exists, will be discussed below.

Therefore, the plaintiff's generalized allegations of Fourteenth Amendment substantive and procedural due process violations related to his alleged false arrest, false imprisonment and malicious prosecution will be dismissed.

### D. Specific Fourteenth Amendment Deprivation of Property Claim

Count IV of the plaintiff's amended complaint alleges a violation of due process under the Fourteenth Amendment. Specifically, the plaintiff alleges that he was improperly forced to pay $250.00 to secure his release from custody without due process of law. Unlike the general due process claims which are subsumed by other constitutional claims under the more-specific-provision rule, this claim must be evaluated under the Fourteenth

Amendment. The Luzerne County Defendants argue the plaintiff was afforded due process during the hearings which established the amount of child support to be paid. (Doc. No. 46 at 33). They argue that the hearing process was the proper forum to dispute the amount and that current action merely seeks to challenge the settled court order. Moreover, the Luzerne County Defendants argue that the court should not rule on what amount of support was owed because it would violate the *Rooker-Feldman* doctrine.[3]

The court finds that the Luzerne County Defendants' arguments are not properly aligned with the plaintiff's due process challenge in this case. The plaintiff asserts that his arrest was predicated on a warrant issued for failure to appear. During his arrest and transport he was told that he was arrested for failure to pay child support. He was then released after paying the alleged deficiency in his support payments. The issue is not whether he paid the correct amount. Rather, the issue is whether a deprivation occurred when he was arrested on a warrant for his failure to appear, not taken before a judge

---

[3] *Rooker v. Fidelity Trust Co., 263 U.S. 413* (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). In *Rooker*, the United States Supreme Court held that lower federal courts may not hear claims actually decided by a state court, as district courts have no appellate jurisdiction. *Rooker*, 263 U.S. at 416. The Supreme Court extended this holding in *Feldman*, explaining that a federal district court lacks jurisdiction over any claims that are "inextricably intertwined" with a state court judgment. *Feldman*, 460 U.S. at 482.

and then released upon paying child support obligations. The court is therefore not ruling on intertwined questions of law related to Pennsylvania family law, but rather on the procedural due process afforded to the plaintiff after his arrest for failure to appear. Therefore, with respect to the due process claim alleged in Count IV, the Luzerne County Defendants' motion will be denied.

### E. Supervisor Liability

Count II of the plaintiff's amended complaint alleges that Defendant James Davis, Director of the Domestic Relations Section, and Kevin Kane, Deputy Director of the Domestic Relations Section are liable under §1983 because they "implicitly or explicitly adopted and implement careless and reckless policies, customs or practices." (Doc. No. 38 at 16). In addition, the plaintiff alleges that these defendants' failure to train and supervise other members of the section led to his unlawful arrest. To state a claim under §1983, the plaintiff must show that the supervisory defendants, acting under color of state law, deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. §1983; *Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir. 1997); *see also Maine v. Thiboutot*, 448 U.S. 1 (1980). Liability under §1983 is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific

allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286 (3d Cir. 1997). "Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F. 2d 1195, 1207 (3d Cir. 1988). *See also Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). The mere assertion "that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did" is insufficient to establish liability. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989). Likewise, a supervisor's mere failure to train, supervise or discipline subordinates does not state a basis for a §1983 claim against the supervisor absent proof of direct participation by the superior in some unlawful conduct. *See Williams v. Bickell*, 2012 WL 5379185, \*5 (M.D.Pa. Oct. 31, 2012)(citing *Brown v. Grabowski*, 922 F.2d 1097, 1119-20 (3d Cir. 1990)). Moreover, a municipality is not liable for merely employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *See Park v. Veasie*, 720 F.Supp.2d 658, 667 (M.D. Pa. 2010) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978)). This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. Id. The plaintiff bears the burden of identifying the policy or custom. Id.

Here, the plaintiff alleges that Defendants Davis and Kane supervisory failures allowed the other defendants to be overcome by pressure from Defendant von Schmeling to carry out an illegal arrest. The plaintiff does not offer evidence of direct personal involvement of Defendants Davis or Kane with respect to the allegedly illegal arrest. The plaintiff has also failed to identify a policy which is a "moving force" behind his allegedly improper arrest. As a [§1983](#) claim cannot survive solely on the grounds of supervisor liability, Count II of the plaintiff's amended complaint will be dismissed.

### F. Excessive Force

As part of Count I of his amended complaint, the plaintiff alleges that defendants who arrested him used excessive force. The Fourth Amendment prohibits a police officer from using more force than necessary to effect an arrest. *See [Estate of Smith v. Marasco](#)*, 318 F.3d 497, 515 (3d Cir. 2003) (citing *[Abraham v. Raso](#)*, 183 F.3d 279, 288 (3d Cir.1999)). The test of whether an officer's use of force was excessive force is the reasonableness of the officer's actions under the totality of the circumstances at the time of the arrest and irrespective of the officer's good or bad motives. *See [Graham v. Connor](#)*, 490 U.S. 386, 397 (1989); *[Kopec v. Tate](#)*, 361 F.3d 772, 776 (3d Cir. 2004). The Fourth Amendment protects against the use of excessive force in making an arrest; however, an officer does have "the right to use

some degree of physical coercion or threat thereof to effect [an arrest]." *Fisher v. Matthews*, 792 F. Supp. 2d 745, 775 (M.D. Pa. 2011)(citing *Graham*, 490 U.S. at 396; *see also Mierzwa v. United States*, 282 Fed.Appx. 973, 979 (3d Cir.2008).

Here, the plaintiff argues that his arrest was improper, but fails to give color to any claim that any defendant used excessive force in effecting the arrest. The plaintiff asserts that he cooperated with the defendants and his sole allegation of physical contact was the placement of handcuffs on his wrists. The plaintiff does not allege that the handcuffs were too tight or caused him pain or physical injury. *See, e.g., Kopec*, 361 F.3d at 777 (arrestee repeatedly requested to have handcuffs loosened and suffered permanent nerve damage to wrist). The minimal physical coercion of placing the plaintiff in handcuffs for transport is insufficient to support a claim of excessive force under the Fourth Amendment. As such, the plaintiff's excessive force claim will be dismissed.

### G. Claims Against Defendant von Schmeling

#### I. Intentional Infliction of Emotional Distress

The Pennsylvania Supreme Court has not yet recognized the tort of intentional infliction of emotional distress ("IIED"), but the Superior Court has and the Third Circuit has predicted that the Supreme Court would adopt the

RESTATEMENT (SECOND) OF TORTS § 46, which provides, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Clark v. Township of Falls*, 890 F.2d 611, 622-23 (3d Cir. 1989) (citing *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183 (1987)). Outrageous or extreme conduct is behavior so outrageous or so extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa.Super. 2005) (internal citation omitted).

In Count VIII of his amended complaint the plaintiff alleges that Defendant von Schmeling manipulated the Domestic Relations Section and procured his public arrest with the clear intent of causing emotional distress to the plaintiff. (Doc. No. 38 at 26). In her motion to dismiss and supporting brief, Defendant von Schmeling denies the allegations and asserts that the plaintiff has failed to state a claim. Defendant von Schmeling, however, offers no case law to support her contention that the factual basis for the plaintiff's claim necessarily fails to meet the Pennsylvania standard for IIED. Therefore, at this stage of the proceeding the court will not dismiss the claim.

21

### ii. Malicious Prosecution

Count V of the plaintiff's amended complaint alleges a [§1983](#) and state law claims for malicious prosecution claim against all of the defendants. Defendant von Schmeling asserts that the plaintiff's claim must fail with respect to her because she is a private individual. A private citizen can be liable for malicious prosecution, however, if she "procured the prosecution ... by giving knowingly false information to a public official that leads to the initiation of proceedings." *[Pellegrino v. U.S. Transp. Sec. Admin.](#)*, 855 F. [Supp. 2d 343, 358 (E.D. Pa. 2012)](#); *see also [Wiltz v. Middlesex County Office](#) [of Prosecutor](#)*, 249 F. App'x 944, 950 (3d Cir. 2007)(evaluating malicious prosecution claim against private defendants). Therefore, Defendant von Schmeling's contention that the plaintiff's claim is flawed because she is a private individual will not sustain her motion to dismiss with respect to this claim, at this stage of the proceedings.

### iii. False Imprisonment

Count VII of the plaintiff's amended complaint alleges false imprisonment under [§1983](#) and Pennsylvania state law against all defendants. Defendant von Schmeling argues that the plaintiff has failed to allege a sufficient factual basis for a claim of false imprisonment against her. The court agrees. Under Pennsylvania law, there are two elements to a claim of false

imprisonment: (1) the detention of another person; where (2) such detention is unlawful. *See Sershen v. Cholish*, 2007 U.S. Dist. LEXIS 79627, at *28 (M.D. Pa. Oct. 26, 2007). Here, the plaintiff has not alleged that Defendant von Schmeling was present at the time of his arrest or that she was physically involved in his detention in anyway. Therefore, he will be unable to prove an essential element of his claim and any claim, for false imprisonment, against Defendant von Schmeling must be dismissed.


## V.    CONCLUSION

The plaintiff's amended complaint asserts multiple causes of action spread and repeated over nine counts. In turn, the two motions to dismiss seek dismissal of some, but not all, of the plaintiff's claims. Therefore, the court will dismiss the claims as follows.

Each of the following claims will dismissed in its entirety. The plaintiff's Fifth Amendment claims will be dismissed against all defendants. Count II of the plaintiff's amended complaint will be dismissed. The plaintiff's claim of excessive force against the arresting officers will be dismissed. The plaintiff's claims of false arrest, false imprisonment and malicious prosecution arising under Pennsylvania law are dismissed with respect to all of the Luzerne County Defendants on the basis of sovereign immunity. With respect to Defendant von Schmeling, the claims of false imprisonment under §1983 and

state law will be dismissed.

Dismissal is also appropriate for the plaintiff's repetitive and duplicative claims. As such, to the extent the plaintiff raises separate and independent claims arising solely under §1983, such claims will be dismissed. In addition, to the extent that the plaintiff alleges violations under the Fourteenth Amendment where a more specific constitutional provision controls, the Fourteenth Amendment claims will be dismissed. Surviving at this stage of the proceedings are the plaintiff's substantive claims for deprivations of his constitutionally and federally protected rights, as brought via the private cause of action provided for by 42 U.S.C. §1983, which have not been otherwise dismissed by this memorandum and subsequent order.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**


**DATED:** January 28, 2013

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-0020-01.wpd