# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL F. ZABRESKY,** | : | |
| **Plaintiff** | : | **CIVIL ACTION NO. 3:12-0020** |
| v. | : | **(JUDGE MANNION)** |
| **JULIANNE VON SCHMELING,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## **MEMORANDUM**[1]

Presently before the court are two motions seeking to limit discovery with respect to three judges who are not parties to the action. The first is a motion to quash and for a protective order filed by Judge Joseph Musto, (Doc. No. 61). The second is a motion for a protective order filed by Judge Clinton Smith and Judge Chester Muroski, (Doc. No. 72). Finding that this case presents no extraordinary circumstances to warrant further exploration of prior judicial actions in the underlying dispute, the court will grant Judge Musto's motion to quash and issue a protective order for each of the three judges.

---

[1]For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

**I.    BACKGROUND**

In his amended complaint, the plaintiff alleges that he was improperly arrested for failure to make child support payments. (Doc. No. 38). The plaintiff alleges that the mother of his child, Defendant von Schmeling, conspired with members of the Domestic Relations Section of Luzerne County (hereinafter the "Luzerne County Defendants") to have him arrested despite the fact that he had fully paid his support obligations. As part of the discovery process, the plaintiff subpoenaed the testimony of three judges who were involved in related court proceedings but are not parties to the instant matter.

On January 18, 2013, Judge Joseph Musto of the Court of Common Pleas for Luzerne County,[2] filed a motion to quash a subpoena he received[3] in the underlying matter and for a protective order, (Doc. No. 61), a brief in support, (Doc. No. 63), and an exhibit, (Doc. No. 62). On February 1, 2013, the plaintiff filed a brief in opposition, (Doc. No. 68). On February 4, 2013, all other defendants, with the exception of Ms. von Schmeling, also filed a brief in opposition, (Doc. No. 69), and an appendix of exhibits, (Doc. No. 70). On

---

[2] Judge Musto has retired from the bench since the alleged events in this case occurred.

[3] Though Judge Musto acknowledges the subpoena, he alleges that it was not properly served because someone simply opened the door of his house and left the subpoena inside which is inadequate under Fed. R. Civ. P. 45(b)(1). The court notes the defense of improper service but finds it is ultimately rendered immaterial upon the courts issuance of a protective order.

2

February 15, 2013, Judge Musto filed a brief in reply, (Doc. No. 74).

On February 14, 2013, Judge Clinton Smith of the Court of Common Pleas for Lycoming County,[4] and Judge Chester Muroski of the Court of Common Pleas for Luzerne County, filed a motion for a protective order, (Doc. No. 72), and brief in support, (Doc. No. 73).[5] On March 3, 2013, the plaintiff filed a brief in opposition to the motion, (Doc. No. 77). On March 19, 2013, Judges Smith and Muroski filed a brief in reply, (Doc. No. 86).

Relevant to the instant motions are facts regarding the nature and extent of the involvement of each of the judges. According to the plaintiff's amended complaint, Judge Musto presided over the 2009 support proceedings during which the plaintiff's support obligations were increased from $533.00 per month to $783.00 per month. (Doc. No. 38). The plaintiff alleges that at a contempt hearing related to the proceedings Judge Musto told the plaintiff that $533.00 would be sufficient for his next monthly payment despite the court's prior written order raising the monthly payment to $783.00. The plaintiff attached a partial transcript from the hearing which did not

---

[4] Judge Smith was sitting on the bench of the Court of Common Pleas of Luzerne County during the relevant period. Judge Smith has retired from the bench since the alleged events in this case occurred.

[5] In their motion Judge Smith asserts that he was not served with a subpoena and Judge Muroski asserts that service upon him was not proper. The court notes the defense of improper service but finds it is ultimately rendered immaterial upon the courts issuance of a protective order.

3

include any definitive record of Judge Musto's alleged statement. In addition, the plaintiff has alleged that Defendants von Schmeling, Quinn and Duffy were present at the time of the statement. Moreover, according to the transcript of the proceedings, Attorneys Donald Rogers and Michael Mey were also present. (Doc. No. 38, Att. 1 at 8).

The plaintiff's brief in opposition to Judge Musto's motion to quash also alleges that an *ex parte* conversation between Judge Musto and Defendant Davis, Director of the Domestic Relations Section, took place at some point after the contempt hearing but before the plaintiff was taken into custody. Though the plaintiff claims he was never told of the conversation nor has knowledge of the content, the plaintiff believes that it was precipitated by Defendant von Schmeling. (Doc. No. 68 at 11).

Judge Clinton Smith's involvement is limited to his signing of the allegedly faulty bench warrant on which several of the defendants relied in arresting the plaintiff. The plaintiff's brief in opposition to the judges' motion for a protective order indicates that the plaintiff seeks information regarding the stamping of the warrant and other clerical processes related to the issuance of the warrant. (Doc. No. 77).

Judge Chester Muroski is not mentioned in the plaintiff's amended complaint. In the motion for a protective order, Judge Muroski indicates that he presided over some of the plaintiff's support proceedings in 2000 and 2001

and again in 2012, but none of these contentious hearings are directly at issue. (Doc. No. 72 at 4; Doc. No. 72, Att. 3).

## II. DISCUSSION

A motion for a protective order is a proper method for challenging inappropriate discovery requests. The court's general authority to issue a protective order is governed by Fed. R. Civ. P. 26, which reads, in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending--or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.] Fed. R. Civ. P. 26(c)(1).

In addition, as the parties have correctly identified, there is specific case law examining the limits of discovery of judicial officers and judicial acts. In *Ciarlone v. City of Reading*, 263 F.R.D. 198, 202 (E.D.Pa. 2009), the United States District Court for the Eastern District of Pennsylvania discussed the general rule that "[t]he decision making process of a judge is usually not a discoverable matter." *Ciarlone*, 263 F.R.D. at 202 (citing *United States v. Morgan*, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429 (1941); *Grant v. Shalala*, 989 F.2d 1332, 1344-45 (3d Cir.1993)). The district court found that,

generally, a judge may not be compelled to testify regarding his or her mental process and "only in the most extraordinary cases, such as a strong showing of bad faith or improper behavior by a judge or quasi-judicial officer or where circumstances were such to overcome the presumption of regularity as to the acts of the decision maker, may a judge be questioned as to matters within the scope of his adjudicative duties." *Id.* (quoting *U.S. v. Roebuck*, 271 F.Supp.2d 712, 718 (D.Virgin Islands 2003))(internal citations omitted).

The plaintiff attempts to distinguish the testimony he seeks as purely factual evidence, separate and apart from any inquiry into the judges' mental processes. The plaintiff points to a footnote in an opinion from the Superior Court of Pennsylvania which recognizes a possible distinction between purely factual testimony and testimony regarding a judge's mental process when "the testimony of a judicial officer is sought regarding a matter in which he or she merely happened to witness or was personally involved in a circumstance that later becomes the focus of a legal proceeding." *Leber v. Stretton*, 928 A.2d 262, n.12 (Pa. Super. Ct. 2007). This court believes the practice of questioning a judge about factual occurrences during a judicial proceeding while successfully avoiding any inquiry into his or her mental process to be a task of exceeding difficulty, if it is even possible. Rather, the court agrees with the ultimate conclusion of the Pennsylvania Superior Court in *Leber*; where the court held that compelling the testimony of judges "regarding events which

occurred in the course of their judicial duty not only will take time away from their role as district judges but also necessitates delving into the thought processes they utilized in those positions." *Leber*, 928 A.2d at 270. The Pennsylvania Superior Court continued: "[a]s a matter of public policy, we find this type of questioning unacceptable and hold that judicial officers are immune from testifying as to information surrounding their conduct during an official proceeding." *Id.*

With respect to each of the judges moving for a protective order, the court finds no extraordinary circumstances exist in the current matter to warrant disturbing the general prohibition against compelling the testimony of judicial officers. There have been no allegations of bad faith or improper motive made against any of the moving judges. Moreover, all of the alleged conduct was either directly part of or closely related to judicial proceedings and was witnessed by other individuals who are available to testify. Nevertheless, the court will further discuss the factual circumstances surrounding each judges' alleged involvement in the instant case.

### *A. Judge Musto*

The plaintiff seeks testimony from Judge Musto regarding whether the judge told the plaintiff he could pay a lesser amount of support during a November 2009 proceeding and what was said during an alleged and apparently unwitnessed *ex parte* conversation with Defendant Davis. The

7

Luzerne County Defendants also seek the judge's testimony regarding the amount of support to be paid.

The court finds no extraordinary circumstances exist to compel Judge Musto to provide testimony. It is undisputed that a written order stated that the plaintiff was to make support payments of $783.00 per month. The plaintiff now asserts that Judge Musto's statement at the hearing cast doubt on the validity of the written order. Such confusion is properly clarified by appropriate motion at the time of the statement, not by subpoena of the judge years later. Moreover, mere confusion as to what a Judge may have said does not rise to the level of the extraordinary circumstance required to overcome the general prohibition on compelling judges to testify about their adjudicative duties.

The plaintiff further argues that he will be prejudiced if he is deprived of the evidence Judge Musto can provide. The court finds no indication that the plaintiff will be unable to secure the evidence sought through other means. It is not disputed that the plaintiff, most of the named defendants and at least two attorneys were presents at the hearing. In addition, Judge Musto has asserted that an audio recording of the proceeding exists. (Doc. No. 63 at 6). Finally, the plaintiff attached a partial transcript of the proceeding to his amended complaint, indicating to the court that a transcript of the proceeding is indeed available. With respect to the alleged *ex parte* conversation, Defendant Davis is alleged to have been a party to the conversation and can

testify as to its subject matter.

Finding that no exception to the general rule against compelling judges to testify exists, the court will issue a protective order barring all parties from serving a subpoena on Judge Musto.

Judge Musto's motion also seeks to quash an outstanding subpoena to testify in the instant case. Under [Fed. R. Civ. P. 45(c)(3)(A)](), "[o]n timely motion, the issuing court must quash or modify a subpoena that... requires disclosure of privileged or other protected matter...or subjects a person to undue burden." The court's issuance of a protective order would insulate Judge Musto from having to comply with the subpoena; however, Judge Musto has moved to quash the outstanding subpoena and the court finds that quashing the subpoena would be appropriate. Laying aside Judge Musto's claim of improper service, the court finds the information sought is of a protected nature as well as presenting an unnecessary burden on Judge Musto because it is available from other sources. Therefore, the court will grant Judge Musto's motion to the extent it requests that the subpoena be quashed.

### *B. Judge Smith*

The plaintiff seeks testimony from Judge Smith regarding the clerical process through which his signature came to be stamped on an arrest warrant for the plaintiff. As discussed above, the plaintiff has made no showing of any

extraordinary circumstances which require the testimony of Judge Smith. Moreover, during the telephone conference held March 11, 2013, counsel for the plaintiff requested leave to depose Judge Smith's secretary regarding the same stamping procedures. The court granted the plaintiff leave to take this deposition and believes it will be sufficient to provide the information sought without any risk of inquiry into Judge Smith's mental process. Therefore, the court will issue a protective order barring all parties from serving a subpoena on Judge Smith.

### *C. Judge Muroski*

Judge Muroski is not mentioned in the plaintiff's amended complaint nor does the plaintiff's brief in opposition to the motion for protective order identify specific information the plaintiff seeks to obtain from Judge Muroski. In fact, beyond generalized arguments that judges are not immune from testifying, the plaintiff's brief in opposition raises no specific arguments as to why the general rule against compelling judges to testify should not apply to Judge Muroski. Devoid of any explanation of the evidence sought or argument as to why Judge Muroski's testimony is required, the plaintiff's opposition to the issuance of a protective order cannot succeed. Therefore, the court will issue a protective order barring all parties from serving a subpoena on Judge Muroski.

### III. CONCLUSION

Finding no extraordinary circumstances in the instant case to overcome the general rule against compelling judges to testify regarding their adjudicative duties, the court will issue protective orders barring all parties from serving subpoenas on Judge Musto, Judge Smith and Judge Muroski. In addition, the court will grant Judge Musto's motion to quash the outstanding subpoena for his testimony. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: April 5, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-0020-02.wpd