# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL F. ZABRESKY,** | : | |
| Plaintiff | : | CIVIL ACTION NO. 3:12-0020 |
| v. | : | (JUDGE MANNION) |
| **JULIANNE VON SCHMELING,** *et al.*, | : | |
| | : | |
| Defendants | : | |
| | : | |

## MEMORANDUM

Presently before the court is Defendant Juliane von Schmeling's Motion for Summary Judgment brought pursuant to Fed. R. Civ. Pro. Rule 56. (Doc. No. 98).

## I. FACTUAL BACKGROUND

In 1995, Defendant von Schmeling commenced child custody and support actions against the plaintiff, the father of her child, in the Court of Common Pleas of Luzerne County, Pennsylvania. (Doc. No. 38). In 2009, Defendant von Schmeling sought modification of the support order and a hearing was set for July 14, 2009. On July 6, 2009, the plaintiff alleges he filed a motion to continue the hearing. Though he claims the motion was accepted by the clerk of the court, it was not immediately docketed and was thereafter never granted. The plaintiff did not appear at the July 14, 2009, hearing. At the

hearing Defendant von Schmeling presented her petition for modification and the Hearing Officer recommended that the plaintiff's monthly child support payment be increased by $250.00 from $533.00 to $783.00. (Doc. No. 38; Doc. No. 47, Att. 2). The plaintiff filed exceptions to the Hearing Officer's recommendation. On October 26, 2009, the Honorable Joseph Musto of the Court of Common Pleas for Luzerne County entered an order denying the plaintiff's exceptions, affirming the recommendation, and setting the plaintiff's monthly child support payment at $738.00. (Doc. No. 38; Doc. No. 47, Exh. C). On November 17, 2009, the plaintiff filed a motion for special relief and a stay which also sought to continue a contempt hearing scheduled for November 24, 2009. Judge Musto denied the request to continue the November 24, 2009, hearing but did not address the merits of the remainder of the motion. (Doc. No. 112, Exh. 16). At the November 24, 2009, hearing, Judge Musto found the plaintiff to be in contempt and placed him on probation for a period of six months. (Doc. No. 38, Exh. A).

The plaintiff alleges that during the November 24, 2009, hearing he and his attorney attempted to clarify whether he was to pay $533.00 or $738.00 in monthly support while awaiting another scheduled hearing in which the plaintiff planned to dispute the modification. (Doc. No. 112, Exh. 16-17). The plaintiff alleges that Judge Musto told him and his counsel to pay $533.00. (Id.). The plaintiff includes a partial transcript from the hearing which does not contain

2

any statements by Judge Musto indicating a payment of $533.00 rather than the amount of $738.00 indicated in the court's written order was allowed. (Doc. No. 38, Exh. A at 8-11). Just after the hearing, Defendant Eugene Duffy Jr., a probation officer, allegedly told the defendant that if he didn't pay his child support, he would be arrested. (Id., ¶38)

On December 4, 2009, Defendant von Schmeling contacted Defendants Michael Quinn, a court support officer, and John Davis, the Director of the Domestic Relations Section about when the plaintiff was required to pay the court ordered child support. (Doc. No. 112, Exh. 4). After speaking with Judge Musto, Defendant Davis contacted Defendant von Schmeling to inform her that if the plaintiff did not make a full payment to the court within 30 days of the order of November 24, 2009, a warrant would issue for his arrest. (Id.). Defendant Davis also communicated Judge Musto's understanding of the order to Defendants Quinn and Duffy via email on December 8, 2009. (Id., Exh. 7).

On December 21, 2009, the plaintiff allegedly called Defendant Quinn before mailing his child support payment to double-check the amount to be paid and that Defendant Quinn allegedly instructed him to pay $533.00 because that is what Judge Musto had stated at the hearing. (Id., Doc. No. 38, ¶41). That same day, the plaintiff submitted his child support payment in the amount of $533.00, $250.00 less than the actual court ordered amount. On

3

December 28, 2009, Defendant Duffy Jr. prepared a bench warrant for the plaintiff's arrest because the child support payment was $250.00 short of the required amount. (Doc. No. 112, Exh. 2). The bench warrant was stamped "probation violation warrant" and indicates that it was issued because the plaintiff "failed to appear, after notice, before the Court for a scheduled conference and/or hearing." Judge Clinton Smith signed the warrant that same day. (Doc. No. 48, Exh. D). Based on the PACSES docket entry, there were no hearings held between November 24 and December 28, 2009, however, that system and Defendant Duffy, Jr. both note the warrant was actually issued for non-payment of $250.00. (Doc. No. 112, Exh. 3, 10). The court order in place at the time of the arrest required the plaintiff to pay $783.00 per month. (Doc. No. 38, ¶30; Doc. No. 47, Exh. C).

On January 7, 2010, Defendants Biscotto, Austin, Para and Tigue, all employees of the Luzerne County Domestic Relations Section, took the plaintiff into custody. These Defendants did not present the plaintiff with a copy of the warrant, but instructed him that he was being taken into custody because he had failed to pay child support. (Id., Exh. 16). The plaintiff was handcuffed and placed in the back of an unmarked car outside of a local restaurant. While in custody, the plaintiff was afforded the opportunity to speak briefly with his attorney and wife. The attorney spoke with Defendants Duffy, Jr. and Davis who each relayed that the plaintiff had failed to pay the correct

4

amount of support and that he had been arrested. The plaintiff asserted that he had been told to pay $533.00, not $738.00 as the defendants claim.

During the plaintiff's transportation to the courthouse, Defendant Tigue allegedly asked the plaintiff "what did you do to piss your ex off so much?" The Defendant then stated that he was referring to Defendant von Schmeling and that she had been "hounding" the Domestic Relations Section to arrest him. (Id.). Once at the courthouse, the plaintiff paid $250.00 at the Domestic Relations Section and was released. He was not taken before a judge, nor was he taken to jail. On January 8, 2010, the bench warrant was vacated.

## II.   PROCEDURAL HISTORY

On January 5, 2012, the plaintiff filed his original complaint. (Doc. No. 1). Pursuant to this court's order dated April 26, 2012, (Doc. No. 26), the plaintiff filed an amended complaint on May 2, 2012. (Doc. No. 38). The plaintiff's amended complaint comprises nine counts. After a motion to dismiss was ruled on by the court, only three claims remain against Defendant von Schmeling: (1) malicious prosecution, (2) intentional infliction of emotional distress, and (3) civil conspiracy. (Doc. No. 64). Defendant von Schmeling filed the instant motion for summary judgement on June 17, 2013, (Doc. No. 98), and the brief in support on July 2, 2013. (Doc. No. 102). Plaintiff filed his brief in opposition on July 30, 2013. (Doc. No. 112).

**III.    STANDARD OF REVIEW**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)*; Aetna Casualty & Sur. Co. v. Ericksen, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249 ; *see also* Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323-24. The moving party

6

can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003)*; *see also Celotex, 477 U.S. at 325*. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998)* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986)*). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp., 477 U.S. at 322-23*; *Jakimas v. Hoffman La Roche, Inc., 485 F.3d 770, 777 (3d Cir. 2007)*.

## IV.   DISCUSSION

As an initial note, the plaintiff points to many facts that are in dispute in this case to indicate why summary judgment is not appropriate. However, this court, in dealing with Defendant von Schmeling's motion for summary judgment, must determine whether the "nonmoving party has failed to make

a sufficient showing on an essential element of the case with respect to which he or she has the burden of proof." *Penny v. Borough of Wildwood Crest*, 28 F.Appx. 137, 138 (3d Cir. 2002)(citing *Celotex*, 477 U.S. at 323). When the nonmoving party fails to present proof concerning an essential element of a claim, all other facts, even if disputed, become immaterial and irrelevant. *Id.*

A. Malicious Prosecution

"A cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have been terminated in favor of the plaintiff." *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). A private citizen can be liable for malicious prosecution, if she "procured the prosecution ... by giving knowingly false information to a public official that leads to the initiation of proceedings," *Pellegrino v. U.S. Transp. Sec. Admin.*, 855 F. Supp. 2d 343, 358 (E.D. Pa. 2012), or if her request, direction, or pressure "was *the determining factor* in the official's decision to commence the prosecution." *Tomaskevitch v. Specialty Records Corp.*, 717 A.2d 30, 33 (Pa. Comm. Ct. 1998)(quoting *Hess v. County of Lancaster*, 514 A.2d 68, 683 (Pa. Comm. Ct. 1986))(emphasis added); *see also Wiltz v. Middlesex County Office of Prosecutor*, 249 F. App'x 944, 950 (3d Cir. 2007)(evaluating malicious prosecution claim against private defendants).

Plaintiff argues, without citing a case to support his position, that because the amount he owed on his child support payments is in dispute, summary judgment should be precluded. (Doc. No. 112, p.21-23). The plaintiff bears the burden of demonstrating there was a "lack of probable cause" for initiating the prosecution. *Cosmas v. Bloomingdales Bros., Inc.,* 660 A.2d 83, 86 (Pa. Super. Ct. 1995). If there is probable cause, then the motive of the prosecuting agent, or any other individual involved, is immaterial. *Corrigan v. Central Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505 (Pa. Comm. Ct. 2003). When there are no material facts in dispute regarding the circumstances leading to an arrest and prosecution, "the court must say, as a matter of law, whether the facts proven show probable cause." *Randall v. Fenton Storage Co.*, 177 A. 575, 577 (Pa. 1935). There is no dispute that the court order in effect at the time of arrest required the plaintiff to pay $783.00, (Doc. No. 38, ¶30; Doc No. 47, Exh. C). The only issue is whether Judge Musto or Defendant Quinn communicated a different amount to the plaintiff. As such, these facts are "sufficient for an ordinary and prudent person to believe that" the plaintiff violated the court order by paying $533.00, establishing probable cause to initiate his prosecution for making a deficient payment. *Id.* "This is an absolute defense to malicious prosecution." *Id.* at 506 (citing *Turano v. Hunt,* 631 A.2d 822, 824 (Pa. Comm. Ct. 1993)). Probable cause acts as a total bar to the claim and entitles Defendant von Schmeling to summary judgment.

The plaintiff also fails to show how the prior proceedings terminated in his favor. "One element that must be alleged and proved in a malicious prosecution actions is the termination of the prior criminal proceeding in favor of the accused." *[Donahue v. Gavin](), 280 F.3d 371, 383 (3d Cir. 2002)*(quoting *[Heck v. Humphrey](), 512 U.S. 477, 484 (1994)*)(applying Pennsylvania law). Such termination can be shown by: (1) a discharge by a magistrate at a preliminary hearing, (2) a grand jury's refusal to indict, (3) the prosecutor's formal abandonment of the proceedings, (4) the quashing of an indictment or information, (5) an acquittal, or (6) a final order in favor of the accused by a trial or appellate court. *Id.*(citing RESTATEMENT (SECOND) OF TORTS §659 (1976)). The plaintiff admits the court order required him to pay $783.00, (Doc. No. [38](), ¶30), he payed $533.00 on December 21, 2009, (Doc. No. [112](), Exh. 16), and he paid the $250.00 to be released from custody on January 7, 2010. (Id.) The plaintiff does not point to any evidence to indicate that he was able to successfully challenge the amount owed or point to any judicial proceedings that terminated in his favor related to this prosecution. Therefore, he has failed to present sufficient evidence on that element as well.

Lastly, the evidence, viewed in the light most favorable to the plaintiff, is insufficient as a matter of Pennsylvania law to sustain a malicious prosecution claim. What amount the plaintiff believed he had to pay is not relevant to this evaluation. The question is whether Defendant von Schmeling, as a private

10

party, provided knowingly false information to procure a prosecution or her influence was *the determining factor* in the initiation of the prosecution. *Tomaskevitch,* 717 A.2d at 33. The plaintiff does not point to any evidence where Defendant von Schmeling knowingly provided false information to procure the prosecution. (Doc. No. 112, p.21-23).

      Therefore, this court's determination of the issue depends whether her communications with the Luzerne County defendants were the determining factor in initiating the prosecution. In *Tomaskevitch*, the Commonwealth Court of Pennsylvania held that uncorroborated hearsay testimony that the defendant was "'pushing' for a prosecution of [the plaintiff]" was insufficient evidence to survive a motion for summary judgment when an independent actor made the decision to initiate the arrest and prosecution. 717 A.2d at 33 fn. 5. Here, the plaintiff does not contest that a warrant was issued for his arrest, that the order of the court required him to pay $783.00, or that he only paid $588.00. (Doc. No. 112, Exh. 15). What he does contest is whether the court gave him permission to pay less than that amount. He further contends that defendant Tigue informed the plaintiff he was being taken to jail because "Ms. von Schmeling was present daily at the offices of the Domestic Relations Section and was 'hounding them to arrest [the plaintiff].'" (Doc. No. 112, Exh. 16). Lastly, he claims that Defendant Duffy, Jr. told him at the contempt hearing on November 24, 2009, that if he did not pay the correct amount, he

11

would be arrested. (Doc. No. 38, ¶37).

Based on the plaintiff's own exhibits and pleadings, Defendant Duffy, Jr. prepared the warrant and had it signed on December 28, 2009, after warning the plaintiff he would do so. (Id., Doc. No. 112, Exh. 3). Aside from the plaintiff's affidavit, there is nothing in the record to indicate that Defendant von Schmeling hounded or harassed any of the other Luzerne County defendants for an arrest. The PACSES log indicates the call between Defendants Quinn, Davis, and von Schmeling on December 4 and 7, 2009, focused on what the court would do if the plaintiff did not pay, not what Ms. von Schmeling wanted or desired. (Doc. No. 112, Exh. 4). The PACSES log further shows that on December 4, 2009, Judge Musto had already determined that if the plaintiff did not pay the additional $250.00 by December 24, 2009, "a warrant would be issued for his arrest when the office reopens following the holidays." (Id.). In his complaint, the plaintiff alleges that Defendants Quinn, Duffy, Davis arrested him because of the actions of his wife. Nothing attached to his brief in opposition to this motion for summary judgment, save for Defendant Tigue's hearsay statement, supports that allegation. (Doc. No. 38, ¶101). Even adopting defendant Tigue's statement, defendant Duffy, Jr. initiated the proceedings by placing a warrant into the system for the plaintiff's arrest, warning the plaintiff a month prior of the consequences of non-payment. (Doc. No. 112, Exh. 3). There is nothing in this record to indicate he was influenced

by defendant von Schmeling. Based on *Tomaskevitch*, the uncorroborated hearsay statement is insufficient as a matter of law to demonstrate a material issue of fact between the parties. *See* 717 A.2d at 33 fn. 5 ("[U]ncorroborated hearsay testimony" that defendant "was 'pushing' for a prosecution" insufficient to raise material issue of fact in claim for malicious prosecution). For the foregoing reasons, Defendant von Schmeling is entitled to summary judgment on the malicious prosecution claim.

### B. Intentional Infliction of Emotional Distress

The Pennsylvania Supreme Court has not yet recognized the tort of intentional infliction of emotional distress ("IIED"), but the Superior Court and the Third Circuit have both predicted that the Supreme Court would adopt the RESTATEMENT (SECOND) OF TORTS §46, which provides, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Clark v. Township of Falls*, 890 F.2d 611, 622-23 (3d Cir. 1989) (citing *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183 (1987)). Outrageous or extreme conduct is behavior so outrageous or so extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988); *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa.Super. 2005) (internal citation omitted). "Pennsylvania courts have found action for IIED to exist only in

13

limited circumstances, where the conduct is clearly outrageous." *Snyder v. Speciality Glass Products, Inc.,* 658 A.2d 366, 375 (Pa. Super. Ct. 1995)(citations omitted).

The plaintiff argues, without citing a case in support of his argument, that the evidence and inferences drawn therefrom, viewed in the light most favorable to him, are sufficient to sustain a cause for IIED because of Defendant von Schmeling's influence over the Luzerne County defendants.

As previously stated, the plaintiff does not claim Defendant von Schmeling made any false statements that led to his prosecution, only that her "familiarity" with and "influence" over the Luzerne County defendants and other individuals, including a sitting judge, led to his arrest. (Doc. No. 112, p. 24). Even accepting the plaintiff's contention that Defendant von Schmeling was "hounding" the Luzerne County defendants to make an arrest, she is entitled to summary judgment. The plaintiff's brief and attached exhibits demonstrate that Defendant von Schmeling was an active participant in a contentious child support dispute. There is no evidence or allegation that she knowingly disseminated false information that led to the plaintiff's arrest and prosecution. The plaintiff points to the "high level of contact" between the defendants as evidence of this extreme conduct, however, these exchanges alone do not rise to the requisite level of outrageous action required by Pennsylvania law. *See Mills,* 589 F.Supp. 2d at 558 (police officer's false statements and actions

14

soliciting sex from plaintiff that led to arrest and prosecution for prostitution insufficient to sustain claim for IIED); *[Capresecco v. Jenkintown Borough](#), 261 F.Supp. 2d 319, 323 (E.D.Pa. 2003)*(holding evidence that defendants actions, including (1) conspiring to deprive seriously ill plaintiff of job and medical benefits, (2) denying plaintiff's opportunity for a hearing before termination, and (3) continuously interfering with plaintiff's access to benefits, were insufficiently extreme or outrageous for the purposes of IIED).

Communicating with the court officials and employees involved in her case and even "hounding" at least one court employee to arrest the plaintiff because of an admitted violation of a court order fail to meet this high standard. As a matter of law, Defendant von Schmeling is entitled to summary judgment.

### C. Civil Conspiracy

Finally, the plaintiff states that summary judgment is inappropriate for the civil conspiracy claim because of the viability of the malicious prosecution and IIED claims. The plaintiff does not address whether the claim can survive on its own. Civil conspiracy requires the plaintiff to plead and prove an underlying tort occurred, "because the cause of action is wholly subordinate to the underlying tort's existence." *[Boyanowski v. Capital Area Intermediate Unit](#), 215 F.3d 396, 407 (3d Cir. 2000)*. "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act."

*Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987). As defendant von Schmeling is entitled to summary judgment on the underlying tort claims of malicious prosecution and IIED, the civil conspiracy claim cannot stand alone. Defendant von Schmeling is entitled to summary judgment on that claim as well.

## V. CONCLUSION

For the foregoing reasons, the defendant von Schmeling's motion for summary judgement is **GRANTED**. An appropriate order will follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED:** October 9, 2013

O:\Mannion\shared\MEMORANDA - DJ\2012 MEMORANDA\12-0020-03.wpd