## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL F. ZABRESKY,** | **:** | |
| **Plaintiff** | **:** | **CIVIL ACTION NO. 3:12-0020** |
| **v.** | **:** | **(JUDGE MANNION)** |
| **JULIANNE VON SCHMELING,** *et al.,* | **:** | |
| | **:** | |
| **Defendants** | **:** | |
| | **:** | |

## MEMORANDUM

Presently before the court is the remaining defendants' Motion for Summary Judgment brought pursuant to Fed. R. Civ. Pro. 56. (Doc. No. 100). The remaining defendants are Michael Quinn, Eugene Duffy, Jr., James Davis, Kevin Kane, James Biscotto, Robert Austin, Joseph Para, and Robert Tigue, all employees of the Luzerne County Court of Common Pleas Domestic Relations Section.

## I.    FACTUAL BACKGROUND

This case arises out of the protracted child custody and support disputes between the plaintiff and Ms. Julianne von Schmeling, a former defendant in this matter.[1] On June 20, 2006, Ms. von Schmeling filed a

_____

[1]Ms. von Schmeling's motion for summary judgment was granted by the court on October 9, 2013 and judgment was entered in her favor. (Doc. No. 124).

support action against the plaintiff in the Luzurne County Court of Common Pleas. (Doc. No. 118, Exh. A).[2] In May 2007, the plaintiff and Ms. von Schmeling agreed that the child support payments would be $533.00 per month, including $50 toward late payments. (Exh. A, Att. 4). On July 25, 2008, Ms. Von Schmeling filed a petition to increase the support amount by $250.00 to $783.00 per month. (Exh. A, Att. 4 & 5). On August 13, 2009, a hearing officer, after presiding over Ms. von Schmeling's petition for modification, issued a report recommending the child support be raised to $783.00 per month. (Exh. A, Att. 5). This report was entered as an interim court order by Judge Musto of the Court of Common Pleas for Luzerne County on September 2, 2009. (Id.).

The plaintiff subsequently filed exceptions to the Hearing Officer's recommendation. On October 26, 2009, Judge Musto entered an order denying the plaintiff's exceptions, affirming the recommendation, and setting the plaintiff's monthly child support payment at $783.00 per month. (Exh. A, Att. 4). On November 17, 2009, the plaintiff filed a motion for special relief and a stay which also sought to continue a contempt hearing scheduled for November 24, 2009. Judge Musto denied the request to continue the November 24 hearing but did not address the merits of the remainder of the

---

[2]All references are to the defendants' exhibits, (Doc. No. 118), unless otherwise noted.

motion. (Exh. A, Att. 5, p. 65). At the November 24 hearing, Judge Musto found the plaintiff to be in contempt and placed him on probation for a period of six months. (Exh. A, p. 74). As a condition of the plaintiff's probation, he was required to remain in compliance with the September 2, 2009 modification. The contempt order specifically notes if the plaintiff failed to pay within the parameters of the current court order, a warrant would be issued for his arrest. (Id., Att. 5, p. 65).

The plaintiff alleges that during the November 24, 2009 hearing he and his attorney attempted to clarify whether he was to pay $533.00 or $783.00 in monthly support while awaiting another scheduled hearing to dispute the modification. (Doc. No. 129, Exh. V & VI). The plaintiff claims that Judge Musto told him and his counsel to pay $533.00. (Id.).[3] A partial transcript from the hearing does not contain any direct statements by Judge Musto regarding the payment of $533.00 rather than the amount of $783.00 indicated in the court's order. (Exh. A, Att. 5) Just after the hearing, Defendant Duffy, a probation officer, told the defendant that if he didn't pay his child support, he

---

[3]The plaintiff argues at length that this alleged hearsay statement by Judge Musto is somehow evidence that the support payment was $533.00, rather than the $783.00 reflected in the court order. The court order, however, is controlling without evidence that it was modified to reflect the alleged off-the-record statement. No evidence has been produced to demonstrate any court order lowering the plaintiff's payment to $533.00. There is no allegation or evidence that the court order has been falsified or that any subsequent order reduced the plaintiff's child support payments to $533.00.

would be arrested. (Doc. No. 129, Exh. V, ¶9) There is no other court order or document reflecting any reduced payment by the plaintiff. On November 24, 2009, Judge Musto's probation order was entered into the Pennsylvania Child Support Enforcement System (PACES), which would track the plaintiff's payments. (Exh. A, Att. 17).

Sometime in December 2009, the plaintiff alleges he called Defendant Quinn, a court support officer, before mailing his child support payment to double-check the amount to be paid. Plaintiff further alleges that Defendant Quinn instructed him to pay $533.00 because that is what Judge Musto had stated at the hearing. (Doc. No. 129, Exh. V, ¶10). That same day, the plaintiff submitted his child support payment in the amount of $533.00. (Exh. A, Att. 4, p. 95). Again, there was no court order in effect that allowed the defendant to pay anything less than $783.00.

On December 28, 2009, Defendant Duffy prepared a bench warrant for the plaintiff's arrest after being notified by PACES of the plaintiff's deficient payment. (Exh. A, Att. 5, p. 61). It was his determination that the child support payment was $250.00 short of the amount ordered by Judge Musto and therefore violated the plaintiff's terms of probation. (Id.). The bench warrant was stamped "probation violation warrant" and indicated that it was issued because the plaintiff "failed to appear, after notice, before the Court for a scheduled conference and/or hearing." This warrant was a standard warrant

used by the Domestic Relations Section and was generated by PACES. (Doc. 128, p. 80-85). According to Defendant Duffy, the stamp "probation violation warrant" indicates failure to pay child support, (Exh. K, p. 30), but this is not part of any Domestic Relations Section written policy. (Doc. No. 129, p. 87-88).

The warrant was stamped by either Judge Clinton Smith or his secretary on December 28, 2009. (Exh. A, Att. 5, p. 61). Judge Smith's secretary may have stamped the warrant at issue after he reviewed it, but she does not recall. (Doc. 129, p. 173-75). She also does not recall if she saw the "probation violation" stamp on the warrant or who dated the warrant. (Id.). Based on the PACES docket entry, there were no hearings held between November 24 and December 28, 2009. However PACES and Defendant Duffy both indicated the warrant was issued for non-payment of $250.00. (Exh. A, Att. 17, p. 19). Specifically, the PACES entry states that the plaintiff must pay $250.00, the exact amount he was short in his most recent child support payment, to have the warrant lifted. (Id.). The terms of his probation explicitly state that any violation would result in a warrant issuing for his arrest.

On December 28, 2009, Defendant Duffy entered the warrant into PACES. (Exh. A, Att. 17, p. 19). The entry of a warrant into PACES also triggers a log into the Pennsylvania Justice Network ("JNET"), letting law enforcement officers statewide know there was a warrant out for the plaintiff's

arrest. (Exh. L, 119). On January 7, 2010, Defendants Biscotto and Austin were called by Defendant Cotter and were told to apprehend the plaintiff at the Checkerboard Restaurant because of the bench warrant. (Exh. R, 10-19; Exh. Q, 10-11). Defendants Para and Tigue were also called by Defendant Cotter to apprehend the plaintiff with Biscotto and Austin at the same restaurant. (Exh. N, p. 13-16; Exh. S, p. 11-12). Biscotto, Austin, Tigue, and Para are all members of the Domestic Relations Section enforcement division. None of the defendants presented the plaintiff with a copy of the warrant, but instructed him that he was being taken into custody because he had failed to pay child support. (Id., Exh. 16). The plaintiff was handcuffed and placed in the back of an unmarked car and driven from the restaurant.

While in custody, the plaintiff was afforded the opportunity to speak briefly with his attorney and wife. (Exh. A, p. 134; Exh. J, p. 32). The plaintiff's attorney spoke with Defendants Duffy and Davis who each relayed that the plaintiff had failed to pay the correct amount of support and that was why he had been arrested. (Exh. J, p. 36, 44-46). The plaintiff was allegedly told by one of the defendants that he was going to jail because of the insistence of former Defendant von Schmeling. (Doc. 129, p. 356-7). The plaintiff, however, was never taken to jail. Rather, he was taken to the Luzerne County Courthouse where he paid $250.00 at the Domestic Relations Section and was released. (Id., p. 357). On January 8, 2010, the bench warrant was

vacated. (Doc. 118, Att. 5, p. 64). This suit commenced approximately two years later.

## II.   PROCEDURAL HISTORY

On January 5, 2012, the plaintiff filed his original complaint. (Doc. No. 1). Pursuant to this court's order dated April 26, 2012, (Doc. No. 26), the plaintiff filed an amended complaint on May 2, 2012. (Doc. No. 38). The plaintiff's amended complaint was comprised of nine counts. After a motion to dismiss was ruled on by this court, five claims remain against the current defendants: (1) false arrest in violation of 42 U.S.C. §1983; (2) procedural due process violations of the Fourteenth Amendment and §1983[4]; (3) malicious prosecution in violation of the Fourth Amendment and §1983; (4) false imprisonment in violation of the Fourth Amendment and §1983; and (5) civil conspiracy. (Doc. No. 64). Ms. von Schmeling filed a motion for summary judgment that was granted on October 9, 2013. (Doc. No. 124). The remaining defendants filed a separate motion for summary judgment on June 18, 2013. (Doc. No. 100). They filed a brief in support and statement of facts with exhibits on September 6, 2013. (Doc. No. 118, Doc. No. 119). The plaintiff filed a brief in opposition to the defendants' motion and a counter-

---

[4]This count applies to all the defendants except Mr. Kane.

statement of facts[5] on October 11, 2013. (Doc. No. 127). The defendants filed

a reply brief on October 17, 2013. (Doc. No. 132). The motion is now ripe for

the court's ruling.


## III.    STANDARD OF REVIEW

---

[5] The plaintiff's response to the defendants' statement of undisputed material facts does not contain a single citation to the record and does not comply with Local Rule 56.1. (Doc. No. 126). The plaintiff includes an additional statement of facts in his brief in opposition to the instant motion for summary judgment. (Doc. No. 127). Although those facts contain some record citations, it cites to the plaintiff's complaint forty-one times. "The motion for summary judgment requires Plaintiff to present evidence that there does exist a genuine issue of material fact, and *Plaintiff may not rely solely on the pleadings*." *Isajewicz v. Bucks County Dept. Of Communications*, 851 F.Supp. 161, 165 (E.D.Pa. 1994)(citing *Celotex*, 477 U.S. at 322)(emphasis added). Any facts the plaintiff relies upon that do not cite to the record are not properly before this court and will not be relied upon in ruling on the defendants' motion. Moreover, any facts presented by the defendants that are not disputed through proper citations to the record in the plaintiff's statement of facts are deemed admitted pursuant to Local Rule 56.1. The plaintiff, after detailing the factual background in his brief in opposition, then includes additional new facts in his argument section. These facts are also not properly before the court. "It is the burden of the parties, in this instance, the [plaintiff], not the court, to properly frame the action through facts which are sufficient to support [his] claims." *Morris v. Kesserling*, 2010 WL 4362630, *2 (E.D.Pa. October 27, 2010). The court will not sift through volumes of briefs, transcripts, and other documents to determine what properly-cited facts the plaintiff actually relies upon in making his arguments. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)(per curiam)("A skeletal 'argument', really nothing more than an assertion, does not preserve a claim. Especially not when the brief presents a passel of other arguments, as [plainitff]'s did. Judges are not like pigs, hunting for truffles buried in briefs." (internal citation omitted)).

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)*; Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law*. Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)*; Aetna Casualty & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995). At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249 ; *see also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (a court may not weigh the evidence or make credibility determinations). Rather, the court must consider all evidence and inferences drawn therefrom in the light most favorable to the non-moving party*. Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007).

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323-24. The moving party

can discharge the burden by showing that "on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *see also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny,* 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co.* v. *Zenith Radio, 475 U.S. 574, 586 (1986)*). However, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure "necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322-23; *Jakimas v. Hoffman La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

## IV.   DISCUSSION

As an initial note, the plaintiff points to many facts that are in dispute in this case to indicate why summary judgment is not appropriate. The court must determine whether the "nonmoving party has failed to make a sufficient showing on an essential element of the case with respect to which he or she

has the burden of proof." *Penny v. Borough of Wildwood Crest*, 28 F.Appx. 137, 138 (3d Cir. 2002)(citing *Celotex*, 477 U.S. at 323). When the nonmoving party fails to present proof concerning even just one essential element of a claim, all other facts, even if disputed, become immaterial and irrelevant. *Id.* Such failure to produce sufficient proof is a fatal flaw in the nonmoving party's case-in-chief, requiring an entry of summary judgment.

### A. Malicious Prosecution

"A cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have been terminated in favor of the plaintiff." *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). The plaintiff bears the burden of demonstrating there was a "lack of probable cause" for initiating the prosecution. *Cosmas v. Bloomingdales Bros., Inc.,* 660 A.2d 83, 86 (Pa. Super. Ct. 1995). If there is probable cause, then the motive of the prosecuting agent, or any other individual involved, is immaterial. *Corrigan v. Central Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505 (Pa. Comm. Ct. 2003). When there are no material facts in dispute regarding the circumstances leading to an arrest and prosecution, "the court must say, as a matter of law, whether the facts proven show probable cause." *Randall v. Fenton Storage*

11

*Co.*, 177 A. 575, 577 (Pa. 1935).

As a threshold matter, no court has held that a probation violation is tantamount to a criminal prosecution. The defendants sought a warrant after the plaintiff's child support payments were $250.00 deficient. A probation violation is more comparable to a "a *quasi*-criminal proceeding at best, which does not rise to the level of a criminal proceeding as that term is understood in the context of a malicious prosecution." *Felker v. Christine*, 796 F.Supp. 135, 141 (M.D.Pa. 1992) aff'd 983 F.2d 1050 (3d Cir. 1992)(holding that probation revocation hearing was not a criminal prosecution as related to claim for malicious prosecution). "Probation revocation, like parole revocation, *is not a stage of a criminal prosecution*, but does result in a loss of liberty." *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973)(emphasis added).

The proceeding at issue here was an arrest for a violation of probation. The plaintiff cites the Pennsylvania Rules of Civil Procedure throughout his brief when discussing the bench warrant, further evidence these proceedings were civil in nature, rather than criminal. (Doc. No. 127). From the record presently before the court, there is insufficient evidence to establish as a matter of law these proceedings were criminal. There is nothing to show this action commenced with the filing of an information by a district attorney or an indictment by a grand jury. The plaintiff cites to no legal authority for the proposition that a probation violation hearing qualifies as criminal proceedings

to support a claim for malicious prosecution. However, as the issue was not briefed, the court rests its decision upon other grounds.

Turning to probable cause, there is no dispute that the court order in effect at the time of arrest required the plaintiff to pay $783.00 and he only paid $533.00 in child support. (Doc. No. 118, Exh. A, Att. 5, p. 95). As such, these facts are "sufficient for an ordinary and prudent person to believe that" the plaintiff violated the court order by paying $533.00, establishing probable cause to initiate his prosecution for making a deficient payment. *Randall*, 177 A. 575, 577. "This is an absolute defense to malicious prosecution." *Id.* at 575 (citing *Turano v. Hunt*, 631 A.2d 822, 824 (Pa. Comm. Ct. 1993)). Probable cause acts as a total bar to the claim and entitles the defendants to summary judgment.

The plaintiff argues at length that because the bench warrant initiating the proceedings against him did not contain sufficient facts to find he violated his probation, summary judgment should be denied. "In order to prevail on these claims, [the plaintiff] must demonstrate that the criminal proceedings against [him] were initiated without probable cause or, under *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir.2000), 'that [defendants] recklessly disregarded the truth in their warrant application and that a warrant application based on what [defendants] should have told the judge would have lacked probable cause.'" *Lincoln v. Hanshaw*, 375 F.App'x 185, 188 (3d Cir. 2010). The plaintiff

13

centrally points to the language in the warrant noting the plaintiff "has failed to appear, after notice, before the Court for a scheduled conference and/or hearing." (Exh. A, Att. 5, p. 95).

It is undisputed that the plaintiff did not miss a hearing prior to his arrest. However, as the plaintiff readily admits, he only paid $533.00 of the court ordered $783.00. (Exh. A, Att. 5, p.65, 74; Doc. No. 129, Exh. V, ¶10). The lack of a complete and compliant payment demonstrates there was probable cause to initiate proceedings to collect the amount owed under both the terms of the plaintiff's probation and the court order. Moreover, applying the standard articulated in *Lincoln*, the facts omitted from the warrant "would not have defeated a finding of probable cause." 375 F.App'x at 189. In fact, the information would only bolster a finding of probable cause. The plaintiff violated his probation by making only a partial child support payment of $533.00 in direct defiance of the standing court order. This additional information does not support the plaintiff's position and further entitles the defendants to summary judgment.

The plaintiff also fails to show how the prior proceedings terminated in his favor. "One element that must be alleged and proved in a malicious prosecution action is the termination of the prior criminal proceeding in favor of the accused." *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002)(quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994))(applying Pennsylvania law).

14

Such termination can be shown by: (1) a discharge by a magistrate at a preliminary hearing, (2) a grand jury's refusal to indict, (3) the prosecutor's formal abandonment of the proceedings, (4) the quashing of an indictment or information, (5) an acquittal, or (6) a final order in favor of the accused by a trial or appellate court. *Id.*(citing RESTATEMENT (SECOND) OF TORTS §659 (1976)). The court order in place at the time of arrest required the plaintiff to pay $783.00, (Exh. A, Att. 5, p. 95), he paid $533.00 in December 2009, (Doc. No. 129, Exh. V, ¶10), and he paid the $250.00 to purge on January 7, 2010. (Id., ¶21). The plaintiff does not point to any evidence to indicate that he was able to successfully challenge the amount owed or point to any judicial proceedings that terminated in his favor related to this action.

The plaintiff argues that a case out of the Court of Common Pleas for Cumberland County, *Hall v. Society for the Prevention of Cruelty to Animals, 27 Pa. D.&C. 3d 34 (Pa. Ct. Comm. Pl. 1983),*[6] supports his argument. The *Hall* case stands for the proposition that even a *nolle prosequi* does not demonstrate a termination in favor of the accused when the accused agrees

---

[6]The plaintiff's brief directs the court to the cite "27 Pa. D. & C. 34," from the <u>first</u> series of the Pennsylvania District and County Court Reports spanning the years 1918-1954. As it was the only case the plaintiff directed the court to "contrast with the circumstances" of the instant matter, the court eventually located, through its own research, the correct citation noted above. The proper citation was to the 3rd series of the Pennsylvania District and County Court Reports covering the years 1977-1990.

to pay restitution and the cost of the prosecution. Rather than support his contention, the case weakens his position. The court order and terms of probation required the plaintiff to pay $783.00 and his payment of $533.00 was $250.00 short of that payment. A warrant was issued for the deficient payment and the plaintiff was arrested. He was released once he paid the $250.00 owed in child support to the Domestic Relation Section, thereby linking his release directly to the payment of the deficient sum. As in *Hall*, the termination of the warrant demonstrates it was conditioned upon his compliance with the terms of probation and the court order. Once he was in compliance, he was released.

The court must address one more issue before it moves to the other counts. The plaintiff filed an affidavit in opposing Ms. von Schmeling's prior motion for summary judgment, (Doc. No. 112, Exh. 5), and a subsequent affidavit in opposing the instant motion. (Doc. No. 129, Exh. V). The affidavits are essentially identical, but the latter includes a numbered paragraph not included in the initial affidavit that states: "At no time on January 7, 2010, did I agree to pay $250.00 to cause an Order Vacating Warrant to be filed." (Exh. V, ¶24). It is unclear to the court why this line was added, but the plaintiff now argues that his payment of $250.00, the exact amount he was short on his child support payments, was unrelated and unconnected to his release, thereby demonstrating that the proceedings terminated in his favor. This

16

argument defies common sense and raises the question of whether the additional information was added in light of the court's prior decision on Ms. von Schmeling's motion for summary judgment.

Affidavits are sworn statements made under the penalty of perjury. 18 U.S.C. §1621. In the context of a motion for summary judgment, they may be relied upon insofar as they make factual allegations based on the affiant's personal knowledge. The court expects affidavits to be complete and accurate accounts of the facts necessary to determine any and all legal issues presented. The legal questions in the instant motion related to the malicious prosecution count are identical to those in the earlier motion for summary judgment. It is unclear why this part of the affidavit, specifically related to the malicious prosecution count, was amended and altered. The court cautions the plaintiff and his counsel that affidavits are not vehicles through which parties may attempt, after an adverse ruling on an identical count, to inject questions of fact to avoid summary judgment. The court takes this opportunity to remind counsel that lawyers, "as officers of the court, are part of our judicial system. As such they are under a duty to further, not obstruct, the rational and fair administration of justice." *Sacher v. U.S.*, 343 U.S. 1, 26 (1952).

B. False Arrest

To succeed on a §1983 claim of false arrest made pursuant to an invalid

17

warrant, whether alleging that the invalidity is based upon an affirmative misrepresentation or a material omission, the plaintiff must establish by a preponderance of the evidence that: (1) the defendants knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant, and (2) that such statements or omissions were material, or necessary, to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). The plaintiff relies centrally on the warrant stating the reason for issuance was that the plaintiff missed a hearing as evidence of the defendants' "reckless disregard for the truth."

The reason for the issuance of the warrant was the plaintiff's deficient payment. The plaintiff, for the first time, now also alleges that the warrant may not have existed on the day of the arrest. For his story to be plausible, it would have required the defendants to generate a warrant sometime after January 7, 2010, intentionally misrepresent the date of the request as December 28, 2009, use the judge's stamp without authorization, pre-date its filing to December 29, 2009, falsify numerous PACES records, falsify the order vacating the bench warrant, forge another judge's signature on the order vacating the bench warrant, and commit perjury in their depositions to the court, all to extort $250 from the defendant by taking him into custody for less

than two hours. To support this theory, the plaintiff points to the fact that the arresting defendants did not see the warrant, he was not presented a copy of it until a later date, and the judge's secretary does not have an independent recollection of stamping or dating the warrant on December 28, 2009, one of numerous files she deals with on a daily basis. (Doc. No. 130, p. 165-172). He further states that Defendant Cotter's lack of memory regarding the events of January 7, 2010 support his contention.

Defendant Duffy testified he generated the warrant on December 28, 2009 and stamped it to indicate it was a probation violation warrant. After it was signed, he entered it into the PACES system on December 29, 2009 and delivered a copy to the enforcement division. (Exh. K, 27-30, 37-38, 43-44, 53-54). The warrant is dated on two separate pages as having been filled out and signed on December 28, 2009. The warrant was also filed in the domestic relations section on December 29, 2009. (Exh. A, Att. 5, p. 61). The entry into PACES also triggers a log into the Pennsylvania Justice Network ("JNET"), letting officers statewide know there was a warrant out for the plaintiffs arrest. (Exh. L, 119). Defendants Biscotto, Austin, Para, and Tigue all testified that Defendant Cotter contacted them and told them to apprehend the plaintiff at the Checkerboard Restaurant on January 7, 2010. (Exhs. N, Q, R &S). There is nothing in Defendant Cotter's deposition to refute this evidence, save for his lack of a specific recollection of this particular paper work. The plaintiff has not

presented any evidence that could lead any trier of fact to find the warrant was somehow falsified or generated on a later date.

The plaintiff cannot rely on speculation and conjecture, or require the court to make fantastic leaps into the realm of vast conspiracies and deception by the Luzerne County Domestic Relations Section without sufficient proof. *See Kovalev v. Philadelphia*, 362 F.App'x 330, 331 (3d Cir. 2010)(holding that plaintiff's "own speculation and conjecture is insufficient to defeat" a motion for summary judgment). The evidence presents a straight-forward situation of the plaintiff's probation violation, the issuance of a standard bench warrant, and arrest. His story, filled with what one might rightfully catagorize as paranoia, is wholly unsupported by the evidence before the court.

Further, "when officers execute a facially valid (but genuinely invalid) arrest warrant, the arrest is unsupported by probable cause unless there is *something other than the warrant itself which justifies the arrest*." *Pitchford v. Borough of Munhall*, 631 F.Supp.2d 636, 650 (W.D.Pa. 2007)(citing *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568-69 (1971))(emphasis added). Here, as previously noted, there was sufficient probable cause that the plaintiff violated the explicit terms of his probation requiring him to pay $783.00 per month in child support. Despite the stamp on the warrant indicating his arrest was for either a "probation violation" or for

missing a hearing, probable cause justified his seizure. As such, summary judgment is appropriate.

### C. False Imprisonment

"To establish a false imprisonment or arrest claim, a detention must be unlawful . . . [and] probable cause defeats a claim . . . for false arrest." *Sheedy v. Philadelphia*, 184 F.App'x 282, 284 (3d Cir. 2006)(citations omitted). As previously discussed above, the plaintiff's deficient payment violated the terms of his probation, providing probable cause for his arrest. The enforcement officers reasonably relied on the report from their supervisor that a bench warrant had been entered for the plaintiff's arrest. As such, summary judgment is appropriate for this claim as well.

### D. Fourteenth Amendment Procedural Due Process Claim

The plaintiff argues that his claim against the defendants for a violation of procedural due process arose when the defendants allowed him to pay his $250.00 in deficient child support without going before a judge. A plaintiff "cannot prevail on his due process claim if the state's post-deprivation procedures, including state tort remedies, are adequate." *Revell v. Port Authority of New York, New Jersey*, 598 F.3d 128, 139 (3d Cir. 2010). The plaintiff argues vehemently that because he was not taken before a judge and

was threatened with a possible night in jail his claim should stand. As a matter of law, the question is not what procedural due process was owed before the deprivation, but whether there were adequate remedies to rectify an improper or illegal seizure. *DeBlasio v. Zoning Bd. Of Adjustment for Twp. Of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995) abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003).

There is nothing before the court to demonstrate he even attempted to recover the funds allegedly coerced from him through Pennsylvania Rule of Criminal Procedure 588, a state tort claim, or a later modification of the court order to reflect what he claims he owed rather than what his probation required. Because the plaintiff failed to present sufficient evidence that he availed himself of "Rule 588 or state tort law or that the available procedures were inadequate," the defendants are entitled to summary judgment. *Willard v. Pennsylvania Soc. For the Prevention of Cruelty to Animals*, 525 F.App'x 217, 221 (3d Cir. 2013).

E. Civil Conspiracy

Finally, the plaintiff states that summary judgment is inappropriate for the civil conspiracy claim because of the viability of his other claims discussed above. The plaintiff does not argue that the conspiracy claim can survive on

22

its own, because it cannot. Civil conspiracy requires the plaintiff to plead and prove an underlying tort occurred, "because the cause of action is wholly subordinate to the underlying tort's existence." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000). "[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987). The defendants are entitled to summary judgment on the underlying tort claims, so the civil conspiracy claim cannot stand alone.


## V.    CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgement is **GRANTED**. An appropriate order will follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: February 4, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-0020-04.wpd