**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL F. ZABRESKY,               :

          **Plaintiff**        :        **CIVIL ACTION NO. 3:12-0020**

       **v.**              :            **(JUDGE MANNION)**

JULIANNE VON SCHMELING,     :
*et al.,*
                     :
       **Defendants**
                     :

## MEMORANDUM

It is often said that a plaintiff is the master of his case. Although this saying is usually invoked to deal with issues such as a court's subject matter jurisdiction or the scope of discovery, it is also appropriate where the plaintiff pursues frivolous claims. The plaintiff has the benefit of limiting or expanding his lawsuit as he sees fit. However, with that benefit comes the responsibility of ensuring that the actions pursued are meritorious. If he does not properly master and control his case, the court may, as a means of deterrence, require him to reimburse the opposing party's attorney's fees. The present suit before the court is one where the plaintiff's claims were so unreasonable and unsupported that the court is compelled to rebuke the master and order him to properly reimburse his adversaries.

Michael Zabresky and Julianne von Schmeling were both involved in a contentious child custody dispute that was the genesis of this lawsuit. In

November 2009, Mr. Zabresky was placed on probation for six months by a Pennsylvania state court judge. He was explicitly warned that if he violated that court order he was to be arrested. Approximately one month after that court order was issued, Mr. Zabresky again failed to pay the ordered amount of $783.00. He was taken into custody for roughly three hours and was immediately released when he paid the deficient amount. That arrest spawned this case, creating over two years of litigation in what can rightfully be described as a vengeful attempt tp punish his ex-wife, the issuing judge, and the court officers for enforcing a valid court order. This frivolous case included numerous motions, depositions, discovery, 143 docket entries, and extensive use of the court's time and resources. All of Mr. Zabresky's claims were disposed through motions to dismiss and/or motions for summary judgment.

Several of the defendants, Michael Quinn, Eugene Duffy, Jr., James Davis, Kevin J. Kane, James Biscotto, Robert Austin, Joseph Para, and John Tigue, (referred to collectively as "the Luzurne County Defendants") filed a motion for attorney's fees. They argue that this matter was frivolous, unreasonable, and groundless. The plaintiff argues, much like in his previous briefs, that these claims had some merit.

The plaintiff's argument is baseless and only serves to further demonstrate the frivolous nature of this lawsuit. The plaintiff's briefs, filled with

2

much bluster and puffery, are examples of counsel attempting to build a case out of nothing - to make his client's outrageous claims seem plausible. This is a prime example of a lawsuit without merit. As such, the defendants' motion is granted and the court will order the plaintiff to reimburse the above named defendants $50,000, in attorney's fees, as noted below.

## I.   FACTUAL BACKGROUND[1]

This case arises out of the protracted child custody and support disputes between the plaintiff and Ms. von Schmeling, a former defendant in this matter.[2] On June 20, 2006, Ms. von Schmeling filed a support action against the plaintiff in the Luzerne County Court of Common Pleas. (Doc. 118, Exh. A).[3] In May 2007, the plaintiff and Ms. von Schmeling agreed that the child support payments would be $533.00 per month, including $50 toward outstanding late payments. (Exh. A, Att. 4). Some time later, on July 25, 2008,

---

[1]A more complete factual background is included in this courts memorandum ruling on the defendants' motion for summary judgment. (Doc. 134).

[2]Ms. von Schmeling's *pro se* motion for summary judgment was granted by the court on October 9, 2013 and judgment was entered in her favor. (Doc. 124). Because she was *pro se* she would not have been entitled to an award of attorney's fees even had she joined in the other defendants' motion. *Pitts v. Vaughn*, 679 F.2d 311, 313 (3d Cir. 1982).

[3]All references are to the defendants' exhibits as attached to their motion for summary judgement, (Doc. 118), unless otherwise noted.

Ms. Von Schmeling filed a petition to increase the support amount by $250.00 to $783.00 per month. (Exh. A, Att. 4 & 5). On August 13, 2009, a hearing officer, after presiding over Ms. von Schmeling's petition for modification, issued a report recommending the child support be raised to $783.00 per month. (Exh. A, Att. 5). This report was entered as an interim court order by Judge Joseph Musto of the Court of Common Pleas for Luzerne County on September 2, 2009. (Id.).

The plaintiff subsequently filed exceptions to the Hearing Officer's recommendation. On October 26, 2009, Judge Musto entered an order denying the plaintiff's exceptions, affirming the recommendation, and setting the plaintiff's monthly child support payment at $783.00 per month. (Exh. A, Att. 4). On November 17, 2009, the plaintiff filed a motion for special relief and a stay which also sought to continue a contempt hearing scheduled for November 24, 2009. Judge Musto denied the request to continue the November 24, 2009 hearing. (Exh. A, Att. 5, p. 65). At the November 24 hearing, Judge Musto found the plaintiff to be in contempt and placed him on probation for a period of six months. (Exh. A, p. 74). As a condition of the plaintiff's probation, he was required to remain in compliance with the September 2, 2009 child support modification. Judge Musto's order specifically notes if the plaintiff failed to pay within the parameters of that court order, a warrant would be issued for his arrest. (Id., Att. 5, p. 65). On

4

November 24, 2009, Judge Musto's probation order was entered into the Pennsylvania Child Support Enforcement System (PACES), which would track the plaintiff's payments. (Exh. A, Att. 17). Less than a month later in December 2009, the plaintiff submitted his child support payment in the amount of $533.00 instead of the required $783.00. (Exh. A, Att. 4, p. 95).

On December 28, 2009, Defendant Duffy entered a warrant for the plaintiff's arrest into PACES. (Exh. A, Att. 17, p. 19). The entry of this warrant into PACES also triggers a log into the Pennsylvania Justice Network ("JNET"), letting law enforcement officers statewide know there was a warrant out for the plaintiff's arrest. (Exh. L, 119). On January 7, 2010, he was taken into custody because he had failed to pay child support as ordered. (Id., Exh. 16).

While in custody, the plaintiff was afforded the opportunity to speak briefly with his attorney and wife. (Exh. A, p. 134; Exh. J, p. 32). The plaintiff's attorney spoke with Defendants Duffy and Davis who each relayed that the plaintiff had failed to pay the correct amount of support and that was why he had been arrested. (Exh. J, p. 36, 44-46). The plaintiff was allegedly told by one of the defendants that he was going to jail because of the insistence of former Defendant von Schmeling. (Doc. 129, p. 356-7). The plaintiff, however, was never taken to jail. Rather, he was taken to the Luzerne County Courthouse where he paid the deficient $250.00 at the Domestic Relations

Section to "purge" his deficiency and was released. (Id., p. 357). On January 8, 2010, the bench warrant was vacated. (Doc. 118, Att. 5, p. 64). This suit commenced approximately two years later.

## II.   PROCEDURAL HISTORY

On January 5, 2012, the plaintiff filed his original complaint. (Doc. 1). Pursuant to this court's order dated April 26, 2012, (Doc. 26), the plaintiff filed an amended complaint on May 2, 2012. (Doc. 38). The plaintiff's amended complaint was comprised of nine counts. After a motion to dismiss was ruled on by this court, five claims proceeded to discovery against the Luzerne County Defendants: (1) false arrest in violation of 42 U.S.C. §1983; (2) procedural due process violations of the Fourteenth Amendment and §1983[4]; (3) malicious prosecution in violation of the Fourth Amendment and §1983; (4) false imprisonment in violation of the Fourth Amendment and §1983; and (5) civil conspiracy. (Doc. 64). The Luzerne County defendants filed a motion for summary judgment, (Doc. 100), that was granted by the court on February 4, 2014. (Doc. 134). The Luzerne County Defendants filed a motion for attorney's fees and a brief in support on February 18, 2014. (Doc. 137, 139). The plaintiff filed his responsive brief approximately three weeks later. (Doc.

---

[4]This count applies to all the defendants except Mr. Kane.

6

142). The defendants filed a reply brief on March 25, 2014. (Doc. 143). The motion is now ripe for the court's ruling.

## III.    STANDARD OF REVIEW

The defendants' motion is brought pursuant to 42 U.S.C. §1988 stating that, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." The prevailing party petitioning for attorney's fees may be either the plaintiff or the defendant. *EEOC v. L.B. Foster Co.*, 123 F.3d 746, 751 (3d Cir. 1997)(citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978)). Although a plaintiff recovers attorneys fees merely by being a prevailing party, a defendant must also show that a case is frivolous, unreasonable, groundless, or without foundation. *L.B. Foster Co.*, 123 F.3d at 751. "It is clear from *Christiansburg* that attorney's fees are not routine, but are to be only sparingly awarded." *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 503 (3d Cir. 1991).

When the defendants prevail, "§1988 serves to relieve a defendant of expenses attributable to frivolous charges. The plaintiff acted wrongly in leveling such allegations, and the court may shift to him the reasonable costs that those claims imposed on his adversary." *Fox v. Vice*, 131 S.Ct. 2205, 2214 (2011). However, defendants may only recover expenses incurred defending against frivolous claims. *Id.* at 2215. The court must therefore

separate the claims with some basis in fact or law from those claims lacking that same support.

The Third Circuit has established three guidepost factors that a court should weigh when determining whether a case is frivolous or without foundation. *L.B. Foster Co.*, 123 F.3d at 750. Those factors are: "(1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the claims prior to trial or had a full-blown trial on the merits." *Id.* (*quoting Sullivan v. School Bd.*, 773 F.2d 1182, 1189 (11th Cir.1985)). The *Foster* court's reliance on *Sullivan* is particularly applicable to the case at hand. In that case, the Eleventh Circuit noted that "[c]ases where findings of 'frivolity' have been sustained typically have been decided in the defendant's favor on a motion for summary judgment . . . In these cases, the plaintiff did not introduce any evidence to support their claims." *Sullivan*, 773 F.2d at 1189 (citations omitted). The question the court must address is what evidence, if any, has the plaintiff proffered in support of his claims.

## IV.    DISCUSSION

### A. Availability of Fees When an Employer Pays for Litigation

A threshold issue the court must address is whether the individual defendants are entitled to attorney's fees when they did not personally pay for

their legal representation. As they were covered by Luzurne County's legal insurance, they suffered no out-of-pocket costs. The plaintiff argues that because Luzurne County paid the $50,000 attorney fee deductible at issue the defendants cannot be awarded attorney fees. The defendants argue that, although the issue has not been squarely addressed by the Third Circuit, it has in other courts and fees should be available even when the prevailing party does not personally pay for the legal representation. The court agrees.

The applicable statute makes no mention of whether the party need actually pay the legal costs incurred. It merely allows for a "prevailing party" to request the court order the opposing party pay reasonable attorney fees. *Fox*, 131 S.Ct. at 2213. The purpose is not to reimburse those who have actually paid out-of-pocket costs for litigation, but to encourage plaintiffs and attorneys to only pursue earnest constitutional violations. *See id.* (noting plaintiff acts as a "private attorney general" in prosecuting 42 U.S.C. §1983 actions). In terms of awarding fees to defendants, the goal is to deter plaintiffs from bringing lawsuits without foundation. *Christiansburg*, 434 U.S. at 700. As such, the statue's purpose is not just to relieve the financial burden of bringing a lawsuit, but to encourage plaintiffs and their counsel to pursue only those claims that have earnest constitutional merit.

Other Circuit and District Courts have held that attorney's fees are appropriate when the defendant is represented by an insurance company and

incurred no direct costs, *Hernas v. City of Hickory Hills*, 517 F.Supp. 592, 593 (N.D.Ill. 1982), by a public service firm or association, *Campbell v. Cook*, 706 F.2d 1084, 1087 (10th Cir. 1983), or by an attorney paid for by another party, such as an insurance company, who will actually receive the fees. *Fidelity Guarantee Mortg. Corp. v. Reben*, 809 F.2d 931, 936 (1st Cir 1987). These cases follow the logic set out in *Christiansburg* which does not delineate between those parties who have sufficient individual funds to pay for their defense from those who rely on other sources to fund the litigation. The purpose of awarding attorney's fees is to discourage frivolous §1983 claims. For those reasons, the fact that Luzerne County rather than the individual defendants incurred the attorney's fees does not bar the court from awarding reasonable such fees to the prevailing party.

### B.   The Prevailing Party

Incredulously, the plaintiff argues that "under one important measure, the plaintiff was the 'prevailing party.'" (Doc. 142, p. 34). He claims that the court should consider "the positive effects which the Plaintiff's suit has produced." (Id., p. 35). To the contrary, for the reasons discussed below, the plaintiff's suit was meritless, contained nothing but strained legal arguments and appeared only designed to extract a revengeful pound of flesh from the plaintiff's ex-wife, the judge, and the public servants that carried out a valid

10

judicial order.

### C.    The Malicious Prosecution Claim was Frivolous

"A cause of action for malicious prosecution has three elements. The defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have been terminated in favor of the plaintiff." *Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988). The plaintiff bears the burden of demonstrating there was a "lack of probable cause" for initiating the prosecution. *Cosmas v. Bloomingdales Bros., Inc.,* 660 A.2d 83, 86 (Pa. Super. Ct. 1995).

A finding of probable cause is generally an issue of fact that needs to be decided by a jury. *Halsey v. Pfeiffer*, 2014 WL 1622769, *20 (3d Cir. 2014). The central question is whether a reasonable jury could find that the defendants did not have probable cause to arrest the plaintiff. *Groman v. Township of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995). Here, there was no contention regarding the terms of the plaintiff's probation. The plaintiff attached to his own amended complaint the order of probation entered on November 24, 2009. That order required the plaintiff to make timely payments. If he failed to do so, the court would issue a warrant for his arrest. The order further noted that the plaintiff "will be immediately lodged in the

11

Luzerne County Correctional Facility pending a court hearing." (Doc. 38, Att. 1, p. 16). There was never any dispute that the <u>court order</u> in effect at the time of arrest required the plaintiff to pay $783.00 and he only paid $533.00 in child support. (Doc. 118, Exh. A, Att. 5, p. 95). As such, these facts are "sufficient for an ordinary and prudent person to believe that" the plaintiff violated his probation and the court order, establishing probable cause to initiate his prosecution for making a deficient payment. *Randall v. Fenton Storage Co.*, 177 A. 575, 577 (Pa. 1935)*.* The law in this circuit is that probable cause is an absolute defense to malicious prosecution. *See Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007)(noting that probable cause destroys any claim for malicious prosecution). Plaintiff's violation of the explicit court order has been obvious since the day this litigation commenced.

The plaintiff also failed to show how the prior proceedings terminated in his favor. "One element that must be alleged and proved in a malicious prosecution action is the termination of the prior criminal proceeding in favor of the accused." *Donahue v. Gavin*, 280 F.3d 371, 383 (3d Cir. 2002)(quoting *Heck v. Humphrey*, 512 U.S. 477, 484 (1994))(applying Pennsylvania law). Such termination can be shown by: (1) a discharge by a magistrate at a preliminary hearing, (2) a grand jury's refusal to indict, (3) the prosecutor's formal abandonment of the proceedings, (4) the quashing of an indictment or information, (5) an acquittal, or (6) a final order in favor of the accused by a

12

trial or appellate court. *Id.* (citing RESTATEMENT (SECOND) OF TORTS §659 (1976)).

Again, much like in his brief in opposition to the motion for summary judgment, the plaintiff argues that the order lifting the warrant after he paid his arrears shows the proceedings terminated in his favor. Not so, rather it only shows that once he came into compliance, the arrest and prosecution proceeded no further. This action cannot correctly be understood to mean that the proceedings were "terminated in his favor."

The court has found that the plaintiff failed to establish two essential elements of his malicious prosecution count. None of the evidence presented excuses his continued pursuit of this claim given he knew the conditions of his court order and, for whatever reason, decided to violate them. He then sued the parties and judge involved without a valid basis. The malicious prosecution claim was frivolous and warrants the awarding of attorney fees.


D.    The Plaintiff's False Arrest Claim was Frivolous

To succeed on a §1983 claim of false arrest made pursuant to an invalid warrant, whether alleging that the invalidity is based upon an affirmative misrepresentation or a material omission, the plaintiff must establish by a preponderance of the evidence that: (1) the defendants knowingly and deliberately, or with a reckless disregard for the truth, made false statements

or omissions that create a falsehood in applying for a warrant, and (2) that such statements or omissions were material, or necessary, to the finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978); *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)). The plaintiff relies centrally on the warrant stating the reason for issuance was that the plaintiff missed a hearing, as evidence of the defendants' "reckless disregard for the truth."

Defendant Duffy testified he generated the warrant on December 28, 2009 and stamped it to indicate it was a probation violation warrant. After it was signed, he entered it into the PACES system on December 29, 2009 and delivered a copy to the enforcement division. (Exh. K, 27-30, 37-38, 43-44, 53-54). The warrant is dated on two separate pages as having been filled out and signed on December 28, 2009. The warrant was also filed in the domestic relations section on December 29, 2009. (Exh. A, Att. 5, p. 61). The entry into PACES also triggers a log into the Pennsylvania Justice Network ("JNET"), letting officers statewide know there was a warrant out for the plaintiffs arrest. (Exh. L, 119). The Defendants apprehended the plaintiff at the Checkerboard Restaurant on January 7, 2010. (Exhs. N, Q, R &S). Here, as previously noted, there was sufficient probable cause that the plaintiff violated the explicit terms of his probation requiring him to pay $783.00 per month in child support. Despite the stamp on the warrant indicating his arrest was for either

14

a "probation violation" or for missing a hearing, probable cause justified his seizure based on his admitted violation of the court order. The same reasoning that applies to the malicious prosecution claim supports awarding attorney fees for the false arrest claim.

     E. <u>The Plaintiff's False Imprisonment Claim was Frivolous</u>

     "To establish a false imprisonment or arrest claim, a detention must be unlawful . . . [and] probable cause defeats a claim . . . for false arrest." *Sheedy v. Philadelphia*, 184 F.App'x 282, 284 (3d Cir. 2006)(citations omitted). As previously discussed above, the plaintiff's deficient payment violated the terms of his probation, providing probable cause for his arrest. For the same reasons discussed above, attorney's fees are appropriate for this claim as well.

     F. <u>The Plaintiff's Fourteenth Amendment Procedural Due Process Claim was Frivolous</u>

     The plaintiff argues that his claim against the defendants for a violation of procedural due process arose when the defendants allowed him to pay his $250.00 in deficient child support without going before a judge. "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those

processes are unavailable or patently inadequate." *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000). A plaintiff "cannot prevail on his due process claim if the state's post-deprivation procedures, including state tort remedies, are adequate." *Revell v. Port Authority of New York, New Jersey*, 598 F.3d 128, 139 (3d Cir. 2010). As a matter of law, the question is not what procedural due process was owed before the deprivation, but whether there were adequate remedies to rectify an improper or illegal seizure. *DeBlasio v. Zoning Bd. Of Adjustment for Twp. Of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995) abrogated on other grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 400 (3d Cir. 2003).

There is nothing before the court to demonstrate plaintiff ever attempted to recover the funds allegedly coerced from him through Pennsylvania Rule of Criminal Procedure 588,[5] a state tort claim, or a later modification of the court order to reflect what he claims he owed rather than what the actual

---

[5]The rule reads in relevant part:
> A person aggrieved by a search and seizure, whether or not executed pursuant to a warrant, may move for the return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

Pa.R.Crim.P. 588. This rule applies all seizures by state actors and does not limit recovery to property seized in a criminal context. *Welsch v. Township of Upper Darby*, 2008 WL 3919354 *6 (E.D.Pa. Aug. 26, 2008)(*citing Commonwealth v. Howard*, 931 A.2d 129, 131 (Pa. Comm. Ct. 2007)).

order required. Because the plaintiff failed to present any evidence that he availed himself of "Rule 588 or state tort law or that the available procedures were inadequate," this claim had no factual or legal basis. *Willard v. Pennsylvania Soc. For the Prevention of Cruelty to Animals*, 525 F.App'x 217, 221 (3d Cir. 2013).

The plaintiff previously argued, without citing a case in support, that because he was not taken before a judge his procedural due process claim should survive summary judgment. (Doc. 127). As discussed above, the Third Circuit case law is clear on this subject: if a plaintiff makes a procedural due process claim, he must explain how state remedies are constitutionally insufficient to recover his wrongfully seized property. *Revell*, 598 F.3d at 139. The plaintiff and his counsel have never attempted to explain this glaring deficiency, nor could they in light of available Pennsylvania State post-deprivation remedies. This count was frivolous and attorney's fees are appropriate here as well.

### G. The Plaintiff's Civil Conspiracy Claim was Frivolous

Civil conspiracy requires the plaintiff to plead and prove an underlying tort occurred, "because the cause of action is wholly subordinate to the underlying tort's existence." *Boyanowski v. Capital Area Intermediate Unit*, 215 F.3d 396, 407 (3d Cir. 2000). "[A]bsent a civil cause of action for a

particular act, there can be no cause of action for civil conspiracy to commit that act." *Pelagatti v. Cohen*, 536 A.2d 1337, 1342 (Pa. Super. Ct. 1987). As discussed above, the court finds that the plaintiff's underlying tort claims were entirely frivolous. Attorney's fees are appropriate for this count as well.

## H. The Additional Constitutional Claims Contained in the Complaint

The plaintiff's amended complaint included nine total counts. (Doc. 36). The plaintiff alleged violations of his Fifth Amendment rights under the takings clause, but did not name a federal actor. As such, this claim was without any factual or legal basis. *See Munoz v. City of Union City*, 481 F. App'x 754, 759 (3d Cir. 2012)(takings clause of the Fifth Amendment is invoked when there is a federal actor, while the Fourteenth Amendment is implicated where there is a state actor); *Cunningham v. North Versailles Tp.*, 2010 WL 391380, \*8 (W.D.Pa. Jan. 27, 2010)("The Fifth Amendment of the United States Constitution protects an individual from deprivation of his property rights by a federal actor, without due process of law. To the extent that Plaintiff has pled a due process claim under the Fifth Amendment, such claims fail, as all Defendants here are state actors.").

The plaintiff also made generalized Fourteenth Amendment claims that were dismissed because they were covered by specific constitutional provisions, such as the Fourth and Eighth Amendments. As the Third Circuit

requires those claims "be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process," they were without legal support as well. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010)(citations omitted). These were all claims covered under his equally frivolous parallel claims for false arrest, false imprisonment, and malicious prosecution. (Doc. 64).

The plaintiff also alleged a claim of excessive force, but that was similarly dismissed because of the well established principle that the minimal physical coercion of placing the plaintiff in handcuffs for transport is insufficient to support a claim of excessive force under the Fourth Amendment. *See Hughes v. Shestakov*, 76 F. App'x 450, 452 (3d Cir. 2003)(no excessive force were officer took arrestee to back of police van, bumped his head on van's roof, jerked his shoulders, and gave him a "rough ride" to the police station). Given the defendants used reasonable force, the claims dismissed at this phase did not make out a *prima facia* case and were without factual or legal support. In sum, they were frivolous and the court will award the defendants attorney's fees for being forced to defend against those counts as well.

I. The Determination of the Attorney Fees

Finding that the defendants are prevailing parties and the claims were

frivolous, the court must now calculate and determine a reasonable fee. As the defendants have only requested a portion of the legal fees, the court need only determine if the evidence supports awarding that amount. The party seeking fees is tasked with submitting evidence to demonstrate the reasonableness of the fees, the hours worked, and the hourly rate. *Rode v. Dellarciprete*, 892 F.2d 1177,1183 (3d Cir.1990). Once the defendants have met this burden, the plaintiff may challenge the reasonableness of the fee. *Bell v. United Princeton Properties*, Inc., 884 F.2d 713, 715 (3d Cir.1989). If objections are raised, the court will use its discretion to adjust the fees as necessary. *Rode*, 892 F.2d at 1183.

In this case, the plaintiff does not challenge the reasonableness of the fees. The defendants have included an affidavit from a local civil rights attorney who has claimed and been awarded hourly rates in the range of $250-$375 per hour. (Doc. 138, Att. 2). John G. Dean, Joseph E. Joyce, III, David Z. Lantz, and Matthew G. Boyd, all members of the law firm representing the defendants, submitted affidavits noting that they regularly charge hourly rates between $160 and $165 in these types of cases. (Doc. 138, Att.4 & 5). They also included a supporting affidavit from another attorney attesting that these rates are reasonable for the locality and the experience of these attorneys. (Doc. 138, Att. 3). The court finds that the hourly rate of $160 for Attorneys Joyce, Lantz, and Boyd to be reasonable.

20

The court further finds Attorney Dean's rate of $165 per hour to be reasonable as well.

The defendants have attached bills noting each attorney who worked on the matter, his or her hourly rate, and the total due for each bill. The defendants attorney's fees and costs totaled $138,416.40 for this entire litigation. Given the defendants have only requested $50,000 in fees, the amount of the deductible the county was required to pay before its insurance company assumed the attorney's fees, the court finds that request to be reasonable.

## V.    CONCLUSION

The court cannot remember ever awarding §1988 attorney's fees to a defendant in a civil action. This case is unique and its filing can only be described as shameful. It appears unequivocally obvious that Mr. Zabresky was out to punish his ex-wife for the audacity to request a court to require her former husband to pay a reasonable child support and pay it on time. He additionally wanted to punish the public servants who carried out this valid court order and the judge who authorized it. Even if Mr. Zabresky did not understand the intricacies of the law, his attorney should have. After all, he is an officer of the court and a member of the Pennsylvania Bar and the Bar for the U.S. District Court for the Middle District of Pennsylvania. He took an oath

21

to uphold the high legal standards and ethical requirements required by both of those esteemed institutions. It is clear Mr. Zabresky has an emotional tie to this case. Regardless of the plaintiff's personal passions or beliefs, he and his attorney had a duty to pursue claims that have earnest factual and legal support. In this case, his claims were devoid of legal or factual basis. The court finds they were so lacking that it is compelled to award attorney fees to the defendants.

For the reasons discussed above, the defendants' motion for attorney's fees is **GRANTED**. The plaintiff will be **ORDERED** to pay the defendants $50,000 in attorney's fees. An appropriate order shall follow.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATED: May 28, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-0020-05.wpd